# JOHN ROE *et al.*

*v.*

# MASON TAYLOR.

1. EVIDENCE — *concerning undue influence exercised over the mind of a testator — what inadmissible.* A party charged with having exercised undue influence over the mind of a testator, whereby the will in controversy was executed, cannot be permitted to introduce in evidence, to disprove such charge, a will executed by the testator prior to the one in question, and which he had canceled, the testamentary disposition made by it being totally variant from the one in dispute.

2. SAME — *what admissible to show mental capacity of a testator.* Where a witness had expressed a decided opinion as to the mental capacity of a testator, it is proper, on cross-examination, to inquire as to any business transactions which the witness may have had with him, at the time he testifies such opinion was formed, and the manner in which the testator then conducted.

3. SAME — *concerning opinions of witnesses — not experts.* A person who is not an expert, may give his opinion concerning the mental capacity of a testator, after first detailing the particular facts and circumstances upon which he bases his judgment, leaving the jury to fix such value upon the opinion expressed as the intelligence and capacity of the witness to form it will warrant.

4. FORMER DECISIONS. The case of *Van Horn* v. *Keenan*, 28 Ill. 449, is not, nor was it intended to be, decisive of this question.

5. SAME — *of testamentary capacity — what will be considered.* A testator possesses testamentary capacity, within the meaning of the law, when he has an understanding of the nature of the business in which he is engaged, of the kind and value of the property devised, and of the persons who were the natural objects of his bounty, and of the manner in which he desires it to be distributed, unless affected with some morbid and insane delusion as to some one of those natural objects of his bounty.

6. WILLS — *formalities in execution of — a question of law.* The question whether a will has been executed with all the proper formalities, is one of law, and not of fact which a jury can consider.

7. INSTRUCTIONS — *must be concise — and not present an argument of the case.* An instruction which has incorporated into it an argument of the case, and extended to great length, is objectionable. Instructions should be concise, and briefly state the point of law on which the party relies.

8. EVIDENCE — *concerning undue influence — nature of defined.* On the question of undue influence exercised to obtain the execution of a will, the rule is, that the influence must be of such a nature as to deprive the testator of his free agency.

9. SAME — *allegation of undue influence — burden of proof on the party asserting it.* The allegation of undue influence is tantamount to that of fraud, and like it, the burden of proving such fact rests upon the party alleging it.

APPEAL from the Circuit Court of Ogle county; the Hon. WILLIAM W. HEATON, Judge, presiding.

The opinion fully presents the case.

Messrs. EDSALL & CRABTREE, for the appellants.

Mr. JOHN V. EUSTACE, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Circuit Court of Ogle county, by Mason Taylor, against John Roe and others, claiming to be the devisees of George Taylor, deceased, under his last will and testament. The object of the bill was to set aside this will, on the allegation, that, at the time of its execution, the testator was partially insane and subject to delusions as to the characters, motives and actions of his relatives and friends, and unfavorable to them, and that he was subject to be easily and unduly influenced against his relatives and friends, and particularly against the complainant, who was one of his children. The bill charges that Bolivar Roe, the father of the devisees so named, seeking to obtain an advantage thereby to his children mentioned in the will as the children of Eleanor Roe, and the grandchildren of the testator, stimulated and encouraged this delusion in the mind of the testator, and did, before the making of the will, and while the testator was so mentally prostrated, exercise an undue influence over him for the purpose of prejudicing his mind against his other relatives and heirs, and particularly against the complainant and his family, and by this undue influence did procure the testator to execute the will in question. The bill expressly charges, that, at the time the will purports to have been made, the testator was not of sound mind, and was incapable of making any valid devise of

his property, and that the paper admitted to probate as the last will of George Taylor was not his last will.

The prayer of the bill is, that defendants be required to answer without oath, and that the court direct an issue to be made up, whether the same is the will of George Taylor or not, and if the same is found not to be his will, that the probate of the same be annulled, canceled and set aside, and that the paper writing so admitted to probate be declared not to be a will, and that it be canceled and annulled.

All of the defendants, except Samuel Taylor and Bolivar Roe, being minors, a guardian *ad litem* was duly appointed for them, who answer the bill.

Bolivar Roe filed his answer, denying all the material allegations as to himself, and disclaims all right and interest in the estate. It does not appear, that Samuel Taylor put in any answer, or that any proceedings were had as against him.

A replication being filed to the answer, the court directed a jury to be impaneled to try the issue, whether the writing produced be the will of George Taylor, deceased, or not, and a verdict was returned that the paper given in evidence is not the will of George Taylor.

A motion for a new trial was overruled and exceptions taken, and thereupon the court decreed, that the paper writing so admitted to probate, was not the will of George Taylor, and that the same was void and of no effect, as such will.

To reverse this decree the defendants, John Roe, Eleanor Roe, Martha Roe, George Roe, Mary Frances Roe and G. Bolivar Roe, bring the record to this court by appeal, and have assigned various errors, the most important of which will be considered.

It appears, from the bill of exceptions, that quite a volume of testimony was taken in the cause, bearing more or less on the question of the soundness of mind of the testator at the time, and prior to the execution of the will in question. The controversy, however, is drawn down to the point of undue influence exercised by Bolivar Roe over the testator, and to the fact of an insane delusion under which the testator was laboring

at the time the will was executed, of which his son, the complainant, was the object and the victim.

The first point made by appellants is, that the verdict was against the evidence.

This point is not discussed by them, and we shall spend no time upon it, any further than remarking, it seemed to satisfy the judge trying the cause, and he was in a better position than is this court to pronounce upon the evidence. While we do not think it of the most satisfactory character, we cannot say it is wholly insufficient to sustain the verdict.

The next point made is, that the court rejected competent evidence offered by the appellants.

This evidence consisted of a previous will made by the testator, on the 12th of September, 1860, which he had canceled by drawing a black line over his signature. The object of its introduction was to disprove by it the charge of undue influence, as it showed by its provisions that these appellants and their deceased mother, then living, were at that time favorably regarded by the testator, there being devised $1,000 to the mother over and above an equal interest in the estate with her two brothers, the complainant, and Samuel Taylor. The will in question was executed on the 25th of July, 1864, by which there was bequeathed to complainant $50 only, Samuel Taylor $100, the children of Samuel and Eleanor Roe each $100, and all the residue of the estate was to be divided equally among the children of Samuel and Eleanor.

When we consider the point being investigated when this canceled paper was offered, it will be perceived that it had no bearing upon it, the testamentary dispositions made by it being so variant from those made by the will in question. Had the rejected paper shown an approximation in its provisions, to those of the will in contest, it might have furnished some evidence to rebut the idea of undue influence having been exercised to procure the execution of the last will. But did it furnish any evidence to disrobe the last will of the charge, that it was made under an insane delusion toward the complainant, by which he and his children were cut off from any participa-

tion in the estate, save the bequest of $50? We think not, and are of opinion the court properly rejected the paper.

The next point made is, the exclusion by the court of this question asked of Thirza Taylor, a witness introduced by the complainant, and on her cross-examination: "Did you have any business transactions with George Taylor, or make any purchases from him during the time you lived in his house in the summer of 1864, and about the time the matter occurred in regard to him, to which you have referred in your direct examination? If so, state what such transactions were, and whether he understood the nature of the same, and how he conducted himself in regard thereto."

The question pending being the mental capacity of the testator, about which this witness had expressed a decided opinion, it seems to us very clear, that on cross-examination, in which great latitude is, and should be, allowed, the question should have been answered. By ruling out the question, appellants were deprived of a resort to one of the most efficient tests for the ascertainment of facts, and therein the court erred.

The next point made by appellants is, the ruling of the court in permitting witnesses, who were not experts, to give their opinions, against the objections of appellants, of the soundness of mind of the testator. It will be remembered, that all these witnesses spoke of facts and circumstances in their own knowledge, as coming under their observation, and on these facts they were asked, if they considered the testator of sound mind.

There has been, and is yet, much conflict of authority on this point, but the weight of it, we are inclined to think, is, that after detailing the facts on which an opinion is based, they may give to the jury that opinion, to be received by them, and to be valued by them, according to the intelligence of the witness and his own capacity to form the opinion. The authorities are collated in Redfield on Wills, 140–146, from which it appears, that in twelve of the States such evidence is received, while in two a different rule prevails.

What was said by this court in *Van Horn* v. *Keenan*, 28 Ill.

449, was not intended as decisive of the question now presented, nor did the case turn upon this point.

It is next complained that the court improperly modified the appellants' instructions numbered three, four, eight and ten.

The modifications of those instructions were substantially of the same character, and brought the minds of the jury to the consideration of the fact they were sworn to try, and that was, was the will of the testator the offspring of an insane delusion, by which complainant's claims to his favorable recollection at the important moment of making the will was pretermitted, and under the influence of such a delusion was disinherited?

Considering the issue before the jury, the instructions, as asked, would have been likely to mislead them, had they not been modified in the manner they were,— the eighth especially. An understanding of the nature of the business about which the testator was engaged, of the kind and value of the property devised, and of the persons who were the natural objects of his bounty and of the manner in which he wished to dispose of his property, — all these are evidence of the possession of testamentary capacity, unless, as the court very properly said, the testator was affected with some morbid or insane delusion as to some one of those natural objects of his bounty.

The modification of the tenth instruction was, for similar reasons, equally unobjectionable.

It is also objected by appellants that the court refused instructions numbered 17, 18, 20, 21, 22, 23, 24 and 25.

The principal objection to instructions 20, 21 and 23 is, that they were too general, and calculated to mislead. As to the seventeenth, it is insisted by appellee, that there is nothing to show, whether it was given or refused, and he proposes to supply the omission by the judge's certificate. This would not be proper, as the record shows it was refused, on what grounds, it is not easy to perceive; but, being refused in the terms asked, can have worked no injury to appellants, for the jury were in full possession of the issue on trial, by all the previous instructions. As to instruction eighteen, which seeks

to bring the form of executing the will before the consideration of the jury, it was objectionable. Whether a will is or not executed with the proper formalities, is a question of law, not of fact.

Instruction twenty-two occupies more than a page of closely printed paper, and is a recapitulation, hypothetically stated, of the material facts in the case, and was properly refused on the authority of the case of *Merritt* v. *Merritt*, 20 Ill. 80.

Instructions twenty-four and twenty-five bring up for consideration the question of undue influence exercised to obtain the execution of a will.

On this point, the authorities most entitled to favorable consideration give the rule as announced in these instructions, and we are of opinion the court erred in refusing them. The rule is, that the influence exerted must be of such a nature as to deprive the testator of his free agency. Redfield on Wills, 522. There it is said, " it may be safe to adopt the language of Chief Justice CLAYTON, in *Chandler* v. *Ferris*, 1 Harrington (Del.) 454, 464, that neither advice nor argument nor persuasion would vitiate a will made freely and from conviction, though such will might not have been made but for such advice and persuasion." Reference is made to the cases of *Calvert* v. *Davis*, 5 Gill & J. 301; *Martin* v. *Teague*, 2 Spear (S. C.) 268; *O'Neal* v. *Farr*, 1 Rich. (S. C.) 80. This learned author, in summing up, says, " it is obvious from the cases cited, that the influence to avoid a will must be such as to destroy the freedom of the testator's will, and thus render his act obviously more the offspring of the will of others than of his own; that it must be an influence specially directed toward the object of procuring a will in favor of particular parties; and if any degree of free agency or capacity remained in the testator, so that, when left to himself, he was capable of making a valid will, then the influence which so controls him as to render his making a will of no effect, must be such as was intended to mislead him to the extent of making a will essentially contrary to his duty, and it must have proved successful to some extent, certainly." Page 524.

This subject is ably and exhaustively discussed in the case of *Means* v. *Means*, 5 Strobhart (S. C.) 188–195.

We come now to the instructions given for appellee, to three of which, 2, 9, 11, appellants take exception.

For the reasons given as to the propriety of appellants' instructions, 24 and 25, instruction number 2, of appellee must be held erroneous. Instructions 9 and 11 throw the burden of proof on appellants, which, we think, under the issue, should not be done. The contestant of the will alleges, that it was executed under an undue influence exerted upon the testator by a party interested in the devise. This is an affirmative, independent fact, and must be proved by the party alleging it.

The allegation of undue influence is tantamount to that of fraud, and, like it, must be proved by the party making it. We cannot understand on what grounds instructions 9 and 11 can be defended.

The substance of these instructions seems to be, if the jury believe the testator was in a condition to be easily influenced, and that Bolivar Roe had opportunities to influence him, therefore you must find that he did unduly influence the testator, and thereby the will is void.

Upon the motion for a new trial founded upon affidavits of supposed misconduct of the jury, it is sufficient to say, the practice indicated in this respect by appellants' counsel would render nearly useless trials by jury, since, on a suspicion being raised that they had acted improperly, they could be called upon to purge themselves thereof, and subject them to annoyances too grevious to be borne.

For the reasons given, the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*