JANE STONE

*v.*

AMOS W. WILBERN *et al.*

MENTAL CAPACITY—*to execute deed.* The fact that a grantor of land is about seventy years of age, and is somewhat enfeebled in body and mind,

if he is capable of transacting ordinary business, and knew and compre-
hended the nature and character of the transaction, is not sufficient ground
to set aside a conveyance of real estate made by him, when no undue influ-
ence is practiced upon him.

WRIT OF ERROR to the Circuit Court of Kane county; the
Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. BOTSFORD & BARRY, and Mr. FRANK CROSBY, for the
plaintiff in error.

Messrs. JOSLYN & COLEMAN, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It appears, from the evidence contained in the record, that
Mary A. Stone originally owned the premises in controversy,
consisting of a farm in Cook county, which, on the 26th day
of January, 1865, she conveyed by deed to one Beverly, who,
on the same day, conveyed the same to Richard Stone, the
husband of said Mary A. Stone. On the 18th day of April,
1865, Mary A. Stone died intestate, and the original bill in
this cause was filed by Isabella Wilbern, daughter of Mary A.
and Richard Stone, and her husband, Amos W. Wilbern, to
set aside and cancel the two deeds executed on the 26th day
of January, 1865, and for partition of the premises. On the
8th day of February, 1871, Richard Stone conveyed the prem-
ises by deed to his son, Robert R. Stone, and to his son-in-law
Amos W. Wilbern.

To the original bill Richard Stone filed a cross-bill, for the
purpose of avoiding the last named deed, on the alleged ground
of fraud and deceit, and undue influence practiced upon him
by the said Robert R. Stone and Amos W. Wilbern.

Upon the hearing, the court rendered a decree dismissing
both the original and cross-bills, to reverse which this writ of
error was brought by Jane Stone, the wife of Richard Stone
by a second marriage, who is the sole devisee and executrix
of the last will and testament of the said Richard.

No proof was introduced on the hearing for the purpose of

sustaining the allegations of the original bill—that branch of the case it will not, therefore, be necessary to consider. The only question, then, presented by the record is, whether the deed of February 8th, 1871, executed by Richard Stone to Robert Stone and Amos W. Wilbern, was procured by fraud and deceit, or undue influence of the grantees, practiced upon the grantor, and this must be determined by the evidence bearing upon the point.

What is the evidence relied upon to defeat the deed? One witness says Richard Stone "was a weak old man." It was also proven that he had trouble with his wife and her two children by a former marriage; that his son Robert visited him a short time before the deed was executed, and, after that interview, the grantor left his wife and went to live with Wilbern; that Wilbern's wife told him he had no right to the farm in question, Beverly's deed to him being good for nothing; that while he was residing with Wilbern he went to the office of a notary public; the deed was prepared and executed.

These are the leading facts relied upon to impeach the deed. Suppose Richard Stone was "a weak old man," that fact did not incapacitate him from conveying his property. So long as he had the mental capacity to transact ordinary business, and the record nowhere shows that this was wanting, he had the power and ability to dispose of his property in such a manner as his judgment might dictate.

At the time the deed was executed, Richard Stone was about seventy years old, and it is no doubt true he was somewhat enfeebled in body, and his mind was not, perhaps, as vigorous as in former years, but that he was capable of transacting ordinary business, and knew and fully comprehended the nature and character of the transaction, is clear, even from his own evidence. At the time the deed was executed, he says, "They told me the second paper was a warranty deed; don't know who was present; the last was explained in the presence of Wilbern and some one who signed it as a witness; suppose I knew, before signing, what the deed was; they told me it was to Capt. Amos W. Wilbern and Robert Stone; expect it was

of the premises in controversy." Again he says: "Made the deed to Wilbern and Robert with the understanding that they would take care of the property for me."

From the evidence of the grantor himself, it is apparent that he not only knew and fully comprehended the nature of the transaction, but his evidence repels the theory that fraud or undue influence was practiced upon him.

Owing to difficulty with his wife and her children, he had abandoned them, and concluded to make his home with his daughter. Under such circumstances, it was not unreasonable that he should place his property in the hands of his children, relying upon them for support.

But if there was any doubt in regard to the matter, from the evidence of the grantor, the testimony taken to sustain the deed would seem to leave no room for controversy.

Hagen Webster, who attested the execution of the deed as a subscribing witness, says: "Signed the deed at Elgin in the office of Joslyn & Wing; Stone, Wilbern and others present; Stone said he could not write; I said to him, it is a warranty deed, and a transfer of all the land mentioned in the deed; then signed his name by taking hold of the pen; don't remember that the deed was read to him; told him it was a deed; he said he understood it was."

Wilbern, one of the grantees in the deed, in his evidence, says: "Stone said he was afraid the property would all be used up and squandered, and it was the hard earnings of himself and his first wife; wanted it for his children by his first wife. He was to have control of it. If he wanted to go back on the farm he was to have a lease, and when he was done with the farm the children were to have it. He was to receive the use of the farm during life. He made the deed voluntarily; no one induced him to make it. He has made no request to have a reconveyance."

The other grantee in the deed was not present when it was executed, nor does it appear that he was aware of the fact that the deed was about to be made. While he may have advised his father to make the deed, we can not understand upon what

principle it can be claimed that the conveyance can be attributed to any undue influence or fraud upon his part. But conceding it to be true that the grantees in the deed, and Isabella Wilbern, each and all of them, advised and encouraged the grantor, Richard Stone, to execute the deed, such would not impair the validity of the instrument, unless the free agency of the grantor was destroyed. *Roe et al.* v. *Taylor*, 45 Ill. 485.

So long as the grantor had the mental capacity to convey, and the deed was his own act, and not that of others, it can not be set aside.

From these views it follows that the decree of the circuit court dismissing the cross-bill was correct, and it will be affirmed.

*Decree affirmed.*