ALICE GRAYBEAL *et al.*

*v.*

JENNIE P. GARDNER *et al.*

*Filed at Springfield June 19, 1893.*

1. CONTEST OF A WILL—*prima facie proof of validity.* Where a will is probated in the county court, a certificate of the evidence of the subscribing witnesses is *prima facie* proof of the validity of the will, when contested in chancery, raising a presumption of the competency of the testator, until disproved by other evidence.

2. SAME—*order of probate court in evidence.* On the contest of the validity of a will which was admitted to probate on appeal in the circuit court, it is error to allow the proponents of the will to introduce in evidence the order of the circuit court admitting the will to probate. But when the contestants of the will allege that such an order was made, its introduction in evidence is harmless.

3. SAME—*issue of mental capacity—what proof is essential.* On a contest of a will by bill in chancery, where the only issue is the soundness of the mind and memory of the testator at the time he executed the will, it is not necessary for the proponents of the will, in order to make out a *prima facie* case, to prove that the will was in writing, and signed by the testator, attested by two or more credible witnesses, and that two witnesses testified they saw the testator sign the will in their presence.

4. On such a contest the question for the jury is, whether the mind and memory of the testator were sufficiently sound to enable him to know and understand the business in which he was engaged at the time he executed his will, judging his competency of mind by the nature of the act to be done, and a consideration of all the circumstances of the case. It is not necessary that he shall have retained all his vigor of mind and memory in order to make a valid will.

5. SAME—*instruction as to burden of proof.* On the trial of a bill to contest a will on the ground of want of mental capacity, the court instructed the jury, on behalf of the proponents, that the burden of proof was upon the proponents to prove by the attesting witnesses that the testator was of sound mind and memory at the time of signing the will, in order to make a *prima facie* case establishing the will, but that if they had made such proof, then the burden of establishing the want of mental capacity was shifted and devolved upon the contestants, and before they could find against the will they must find, from the preponderance of the evidence, that the testator did not, on the day of the

date of the will, have sufficient mind and memory to make and execute the same, and if the evidence was equally balanced as to his sufficiency of mind and memory to make such will, then it showed that the paper was the will of the testator: *Held,* that the instruction announced a correct rule as to the burden of proof.

6. SAME—*instructions—of their qualities.* On the contest of a will, where an instruction given for the proponents, which was not intended to define testamentary capacity, but to inform the jury that a person may dispose of his property as he pleases, it is not necessary to insert in every clause of the instruction that the testator must be of sound mind and memory.

7. WILLS—*their proper execution is a question of law.* The question whether a will has been executed with all the proper formalities, is one of law, and not of fact, which a jury can consider.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Fulton county; the Hon. JEFFERSON ORR, Judge, presiding.

Messrs. H. W. MASTERS & SON, and Messrs. GRAY & WAGGONER, for the appellants:

The trial is *de novo,* without regard to previous probate, and is exclusively on the evidence submitted to the jury. *Rigg* v. *Wilton,* 13 Ill. 15; *Tate* v. *Tate,* 89 id. 42.

The party who relies on the will is called upon to prove anew its execution and validity. *Rigg* v. *Wilton, supra.*

As to the test of mental capacity, see *Campbell* v. *Campbell,* 130 Ill. 467; *Shropshire* v. *Reno,* 5 J. J. Marsh. 91; *Stevens* v. *Vancleve,* 4 Wash. C. C. 262; *Harrison* v. *Rowan,* 3 id. 385; *Hall* v. *Hall,* 18 Ga. 40; *McMasters* v. *Blair,* 29 Pa. St. 398; *Converse* v. *Converse,* 21 Vt. 168.

In this case appellees were required to "prove anew" the execution and validity of the will. *Carpenter* v. *Calvert,* 83 Ill. 63; *Rigg* v. *Wilton, supra.*

They must show that the will was legally executed, to make a *prima facie* case. *Wilbur* v. *Wilbur,* 129 Ill. 393.

In instructions 3, 5, 6, 8, $8\frac{1}{2}$ and $8\frac{3}{4}$, given for appellees, the court assumes that the testator executed the will, and nowhere submits to the jury whether the testator signed said

will, unless it is in the ninth. This was error. *Railroad Co.*
v. *Robinson,* 106 Ill. 146; *Dickie* v. *Carter,* 42 id. 377; *Kin-
ney* v. *People,* 108 id. 520.

Mr. D. ABBOTT, and Messrs. GRANT & CHIPPERFIELD, for the
appellees :

The probate of the will is *prima facie* evidence of its validity.
*Holloway* v. *Galloway,* 51 Ill. 161; *Carpenter* v. *Calvert,* 83 id.
71; *Buchanan* v. *McClellan,* 105 id. 59.

A will can not be impeached for the injustice or improprie-
ties of its provisions. *Kimball* v. *Cuddy,* 117 Ill. 213.

A testator of sound mind has a right to leave his estate to
whom he pleases. *Freeman* v. *Easly,* 117 Ill. 322; *Schneider*
v. *Manning,* 121 id. 385.

It is objected that certain instructions assume that the tes-
tator executed the will, thereby taking from the jury the ques-
tion whether he signed it or not. Counsel seem to forget that
they allege in the bill that it was signed by the testator, and
it was proved so by the subscribing witnesses, Walker and
Kriske, and nowhere disputed. The instructions should be
based on the pleading and the evidence. *Endsley* v. *Johns,*
120 Ill. 475; *International Bank* v. *Ferris,* 118 id. 467; *Ray*
v. *Goings,* 112 id. 663; *Davis* v. *People,* 114 id. 96; *Quinn* v.
*People,* 123 id. 337.

The admission of improper evidence can not always be re-
garded as a cause for reversal. *Railway Co.* v. *Sawyer,* 71 Ill.
362; *Trogdon* v. *Murphy,* 85 id. 119.

When evidence is improperly admitted, but the court can
see that it could not have changed the result with the jury,
the judgment will not be reversed on account of such improper
testimony. *Ritter* v. *Schenk,* 101 Ill. 387; *Railroad Co.* v.
*Rung,* 104 id. 641; *Tillotson* v. *Mitchell,* 111 id. 523; *Life
Ins. Co.* v. *Foote,* 79 id. 361.

Finding of the court justified by proof, *non obstante,* some
improper evidence, admission of the latter will not reverse.

*Jackson* v. *People*, 126 Ill. 139; *In re Will of Bonse*, 18 Ill. App. 433.

If it appears that some improper testimony has been admitted, or improper instructions given, still, if the legitimate evidence in the case fully sustains the verdict, and it is apparent that upon another trial, with the improper evidence excluded, the result would necessarily be the same, the judgment will not be reversed. *Carpenter* v. *Davis*, 71 Ill. 395; *Champaign* v. *Collier*, 13 Ill. App. 478; *McConnel* v. *Kibbe*, 33 Ill. 175; *Shevalier* v. *Seager*, 121 id. 566; *Potter* v. *Potter*, 41 id. 80; *Watson* v. *Wolverton*, id. 241; *Pahlman* v. *King*, 49 id. 266; *Hardy* v. *Keeler*, 56 id. 152; *Sheldon* v. *School District*, 24 Carn. 88; *Welworth* v. *Readston*, 24 Vt. 252; *Brantly* v. *Carter*, 26 Miss. 282; Graham & Waterman on New Trials, (3d ed.) 301, *et seq.*

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was a bill in chancery, by appellants, against appellees and others, in the circuit court of Fulton county, to the December term, 1891, to contest the validity of the last will and testament of Harrison Putman, deceased. The bill alleges that complainants are grandchildren of Harrison Putman, who, "on the 8th day of April, 1890, executed a certain instrument in writing purporting to be his last will and testament, and afterwards, on the 18th day of June, 1891, departed this life, leaving the complainants and defendants as his heirs-at-law; that by said alleged will all of decedent's real and personal property was devised and bequeathed to the defendants and none to the complainants; that on the 26th day of August, 1891, said writing was exhibited to the circuit court of said county for probate, on appeal from the county court, where probate was refused; that said Harrison Putman, at the time he executed such alleged will, was not of sound mind and memory, but, on the contrary, was in his dotage, and his mind and memory were so impaired as to render him wholly

incapable of making any just and proper distribution of his estate." Appellees answered the bill, admitting complainants are the grandchildren of decedent, the execution of the instrument in writing by Harrison Putman, and his death, as alleged in the bill; that complainants and defendants are his heirs, and that nothing was devised or bequeathed to complainants; also, the probate of the will, but denying that at the time of the execution of such will decedent was not of sound mind and memory, and that he was in his dotage, and alleging the truth to be, that at that time he was in the possession and exercise of all his mental faculties, and fully understood what he was doing, and denying that complainants are entitled to the relief prayed. Other defendants to the bill failing to answer, ·were defaulted.

On the bill and answer an issue of fact was made up, and tried by a jury, as provided by statute in such case, resulting in a verdict "that the paper offered in evidence by the proponents was the last will and testament of Harrison Putman, deceased." A motion by complainants for a new trial was overruled, and a decree entered dismissing the bill at their costs. On appeal, the Appellate Court for the Third District affirmed that decree.

A copy of the will, made an exhibit to the bill, is in the following language:

"I, Harrison Putman, of Canton, in the county of Fulton and State of Illinois, do make and declare this to be my last will and testament:

"*First*—I direct that all my just debts and funeral expenses be first fully paid.

"*Second*—I give and bequeath to my beloved daughter Caroline Thompson $2000 in money.

"*Third*—I give and bequeath to my beloved daughter Jennie P. Gardner $2000 in money.

"*Fourth*—I give and bequeath to my beloved daughter Mary Gardner $2000 in money.

"*Fifth*—I give and bequeath to my beloved daughter Ella King $2000 in money.

"*Sixth*—It is my will that the above legacies shall be paid first, as soon as practicable after my decease, and after the payment of the above legacies I desire that all my property remaining, both real and personal, shall be divided equally between my seven children, to-wit, Francis M. Putman, Caroline Thompson, Martin Putman, Jennie P. Gardner, Mary Gardner, Ella King and Charles Putman.

"*Seventh*—It is my will that there be no administration upon my estate, and that my said children, as above named, shall adjust all matters in connection with my estate among themselves, as above directed.

"In witness whereof, I, Harrison Putman, have hereunto set my hand and seal this 8th day of April, A. D. 1890."

The will was witnessed in the usual form by M. Walker and Joseph Kriske. It appears that Joseph Kriske, though stating that he witnessed the will, failed to declare, on oath or affirmation, before the county court, that he "believed the testator to be of sound mind and memory at the time of sign-ing or acknowledging the same," and for that reason the will was not admitted to probate in that court. On appeal to the circuit court it was duly admitted to probate, as is provided by section 13 of the Statute of Wills, in cases of appeal, etc.

On the trial of the issue in this case, the court permitted the defendants, over the objection of complainants, to read to the jury the order of the circuit court admitting the will to probate, and this ruling is the first assignment of error relied upon by appellants to reverse the decree below.

We held in the case of *Purdy* v. *Hall et al.* 134 Ill. 309, that it was error to permit the defendants to a bill like this to in-troduce in evidence the order of the county court admitting the contested will to probate. What was there said will apply with equal force to the admissibility of such an order of the circuit court on appeal, and it must be conceded that where

the appeal is by the proponents of the will, they being allowed, on such appeal, to introduce any evidence competent to establish a will in chancery, (sec. 13, *supra,*) there may be stronger reason for holding such evidence incompetent. We said, however, in the *Purdy case,* we did not wish to be understood as holding that the introduction of such improper evidence would, in all cases, or even in that case, of itself, be reversible error. It is impossible to see how the slighest injury could have resulted to appellants from the error complained of. They had alleged in their bill that such an order was made, and therefore the mere proof of its existence was harmless. Before it was offered in evidence both of the subscribing witnesses had testified, in the most positive manner, to every fact necessary to admit the will to probate, and the will itself, without objection, had been admitted in evidence. The order recites no evidence whatever, bearing upon the issue before the jury, except that said subscribing witnesses testified that they, as witnesses, and at the request of the testator, saw him sign the writing as his last will, and that they signed the same as witnesses, "and that they believed the said Harrison Putman, the testator, was, at the time of signing and acknowledging the said last will and testament, of sound mind and memory." In other words, the order, as read to the jury, expressly stated that the will was admitted to probate in the circuit court on the evidence of the subscribing witnesses, alone. If the will had been probated in the county court, a certificate of the evidence of these witnesses would have been *prima facie* proof of the validity of the will, raising a presumption of the competency of the testator, until disproved by other evidence. (*Riggs et al.* v. *Wilton et al.* 13 Ill. 15; *Holloway* v. *Galloway,* 51 id. 159; *Carpenter* v. *Calvert,* 83 id. 62; *Wilbur* v. *Wilbur et al.* 129 id. 396.) The testimony of these witnesses, given in person before the jury, should, under the facts and circumstances of this case, be given no less weight than a mere certificate of it would have been entitled to if they had proved

the execution of the will when called in the county court. Having made a *prima facie* case, then, by the evidence of the subscribing witnesses and the introduction of the will, the recital that those witnesses had sworn to the same facts before, added nothing to the weight of their testimony. Their evidence, with or without the recital, made a *prima facie* case for the proponents, and nothing more. The error, therefore, of allowing the objectionable order to be read to the jury, should not operate to reverse the decree below.

It is insisted that the verdict of the jury is contrary to the evidence. Counsel for appellants say, that in order to make out a *prima facie* case, the proponents of the will were bound to show that the will was in writing and signed by the testator, attested by two or more credible witnesses; that two witnesses testified that they saw the testator sign the will in their presence, and that they believe the testator was of sound mind and memory at the time of signing or acknowledging the same. That these matters of form and proof are essential to the validity of a will in this State is true, but it does not follow that they were in issue in this case.

But a single question was submitted to the jury, viz., the soundness of the mind and memory of the testator at the time he executed the will which the bill alleges he made. On that issue the evidence is voluminous and conflicting. None of the witnesses were experts. The rule is, that such witnesses, "after detailing the facts on which an opinion is based, may give to the jury that opinion, to be received by them, and to be valued by them according to the intelligence of the witness, and his own capacity to form the opinion." (*Roe et al.* v. *Taylor*, 45 Ill. 485.) Tested by this rule, the evidence of many of the witnesses on either side is of no value whatever. There is no difficulty in reaching the conclusion that Harrison Putman was endowed by nature with a vigorous intellect and strong will powers, and that these faculties remained unimpaired to the time of his death, except as they became enfeebled

by old age. Some of the witnesses testifying on behalf of contestants describe him as being affected with "*senile dementia,*" or in a state of second childhood, about the time the will was executed; but it is very difficult, if not impossible, from their testimony, to reach the conclusion that at that time his mind, when directed to an ordinary business transaction, was not fully capable of comprehending and understanding it. The clear preponderance of all the evidence is, that he was then of sound mind and memory, within the decisions of this court defining testamentary capacity. There is no evidence whatever in the record tending to show that he did not know the character and value of his property, or that he did not remember the natural objects of his bounty. True, he gave nothing, by his will, to his grandchildren; but that fact does not prove that he had forgotten them. (*Snow et al.* v. *Benton et al.* 28 Ill. 306.) It can not be said that the will is an irrational one, unless we hold all wills unreasonable which do not distribute the testator's property equally among his heirs-at-law. There is no pretense that the will was not written according to the testator's own dictation. It is very simple in form, and easily understood. The question for the jury was, "whether the mind and memory of the testator was sufficiently sound to enable him to know and understand the business in which he was engaged at the time he executed the will, judging his competency of mind by the nature of the act to be done, and a consideration of all the circumstances of the case." (*Trish et al.* v. *Newell et al.* 62 Ill. 196.) It was not necessary that he should have retained all his vigor of mind and memory in order to make a valid will. *Yoe* v. *McCord,* 74 Ill. 33; *English* v. *Porter,* 109 id. 285; *Bice* v. *Hall,* 120 id. 597; *Gould et al.* v. *Hull et al.* 127 id. 523; *Campbell et al.* v. *Campbell,* 130 id. 466. We think the verdict on the question submitted was in accordance with the weight of the evidence.

It is insisted that the court erred in giving instructions on behalf of proponents numbered 2, 3, 5, 6, 8, $8\frac{1}{2}$, $8\frac{3}{4}$ and 9.

The criticism made upon the second is without force. The object of that instruction was not to define testamentary capacity, but to inform the jury that a person may dispose of his property by will as he pleases. It was not necessary to repeat in every clause of it that a testator must be of sound mind and memory. Other instructions given, both at the request of contestants and the defendants, fully covered that point.

The objections urged to the other instructions, except the ninth, assume that the formal execution of the will, viz., its being in writing and signed by the testator, attested by two or more witnesses, etc., was in issue before the jury, and it is said: "These instructions assume that the testator executed said will, thereby taking from the jury the question of whether he signed it or not." As before stated, no such question was submitted to the jury, either by the pleadings or proofs. "The question whether a will has been executed with all the proper formalities, is one of law, and not of fact, which a jury can consider." *Roe et al.* v. *Taylor, supra.*

The only substantial objection urged against the ninth is, that it, in effect, put the burden of proof on appellants upon the whole case, when it is in the first instance upon proponents. The instruction does tell the jury that the burden of proof is upon the defendants to prove, by the attesting witnesses, that the testator was of sound mind and memory at the time of signing the will, in order to make a *prima facie* case establishing the will, but that if they had made such proof, then the burden of establishing the want of mental capacity was shifted, and devolved upon the contestants, and before they could find against the will they "must find, from the preponderance of the evidence, that said Harrison Putman did not, on the 8th day of April, 1890, have sufficient mind and memory to make and execute the alleged will; and if, after you shall have considered all the evidence in the case, for the purpose of ascertaining therefrom whether the said Harrison

Putman had sufficient mind and memory to make such will, you should find the evidence evenly balanced on that question, as to whether he had, at that time, sufficient mind and memory to make such will, you should find that said paper offered in evidence is the will of said Harrison Putman." The instruction does not differ materially from the one quoted and approved in *Wilbur* v. *Wilbur*, 129 Ill. 392, in commenting upon which we said: "The rule, as stated in this instruction, throws the burden of proving the sanity of the testator, in the first instance, on the party asserting the validity of the will; yet, after a *prima facie* case has once been made out by the evidence of the subscribing witnesses, it throws the weight of the legal presumption of sanity into the scale in favor of the proponent, from which it necessarily results that, upon the whole case, the burden of proof rests upon the contestants," and, so understood, it was held to announce the correct rule as to the burden of proof, citing *Carpenter* v. *Calvert*, 83 Ill. 62. It is true that several other instructions given on behalf of proponents, and one on behalf of contestants, place the burden of proof as to soundness of mind and memory upon the defendants; but that is an error in appellants' favor, and one of which they can not complain.

A general objection is made to the modification of two of the instructions asked on behalf of appellants, but we discover no error in that regard.

Among the reasons assigned in support of the motion for a new trial, it was alleged that members of the jury, during the progress of the trial, accepted from the defendants, or their agents, intoxicating liquors, and drank the same; that the jury were improperly influenced by persons acting for the defendants; that the verdict of the jury was the result of improper influences; and it is very earnestly insisted that the circuit court erred in refusing to grant a new trial for these reasons. In support of the motion, and in denial of the charges therein made, a volume of affidavits was filed. The

' controversy is purely one of fact, the defendants denying most positively that they furnished intoxicating liquors to any member of the jury, directly or indirectly, or that they attempted, in any way or manner whatever, to influence it in its verdict. Some of the affidavits filed in support of the motion tend to prove that one, and perhaps two, of the jurors drank liquor during the trial, which they thought was furnished by persons acting in the interest of the defendants; but counter-affidavits are to the contrary. After reading the affidavits we are satisfied that the alleged misconduct of members of the jury and of the defendants, or others acting in their behalf, was not established. There is an utter absence of proof that the verdict was the result of misconduct.

On the whole record, we are of the opinion that the decree of the circuit court is right, and that the judgment of the Appellate Court should be affirmed. '

*Judgment affirmed.*