THE CHICAGO UNION TRACTION COMPANY

*v.*

JULIUS G. LAWRENCE.

*Opinion filed October 24, 1904.*

1. EVIDENCE—*range of testimony as to effect of injury on plaintiff's mental condition.* As tending to show the effect of plaintiff's injury upon his mental condition, it is competent to show such condition before the injury and also continuously from and after the injury, and any witness having any knowledge upon the subject during any part of the time covered by the inquiry is competent to testify, the weight of his testimony being for the jury.

2. TRIAL—*when improper remark of counsel will not reverse.* A remark by counsel for the plaintiff on a second trial to the effect that he was "satisfied at the end of the other trial" will not reverse, where an objection to the remark is sustained and the remark criticised by the court and where the verdict is amply sustained in other respects.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

JOHN A. ROSE, (W. W. GURLEY, of counsel,) for appellant.

JOHN F. WATERS, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county in favor of appellee, Julius G. Lawrence, in an action brought against appellant for damages for personal injuries sustained by him by reason of being thrown from one of appellant's cars while a passenger, on the 6th day of April, 1900.

Appellee was a police officer, and boarded a west-bound car on North avenue in the evening on his way home. The car was crowded, so that appellee was compelled to stand upon the rear step, and he held on to the hand-rails. While the car was going rather fast down an incline on North avenue near where appellant's track passes under the elevated structure of the Northwestern railroad, the car gave a sudden jolt on account of a sag in the north rail of appellant's track, and appellee was thrown with great force off the car, falling upon his back on the paved street, and the back of his head struck upon the stones, producing a fracture of the skull at the base, thereby, as it is claimed, severely injuring his brain.

This case has been twice tried. At the first trial a verdict was rendered in favor of appellee for $9000, which verdict was set aside and a new trial granted. On this the second trial a verdict for $10,000 was rendered and judgment entered thereon, which judgment has been affirmed by the Appellate Court.

The errors here insisted upon are; (1) admitting incompetent evidence, and (2) misconduct of the plaintiff's counsel during the trial.

The incompetent evidence claimed to have been admitted was that of certain non-expert witnesses, who, it is urged, were allowed "to give their opinions as to the plaintiff's sanity at the time of the trial, based upon matters which are not shown in evidence, or, in certain instances, upon matters which occurred immediately after the accident and long previous to the trial of the case." The inquiry was not alone as to appellee's mental state at the time of the trial, but covered the periods before and after his injury. The question was as to the effect, if any, of the injury received by appellee, upon his mind, and to determine that question it was competent to show his mental status before the injury and also continuously from and after the injury, and any witness that had any knowledge upon the subject covering any part of the time to which the inquiry was open was competent and such evidence material. It is not necessary that a single witness shall be able to cover the entire time, but it is only necessary that the evidence and testimony, as a whole, shall convey to the jury such facts as shall enable them to form a judgment in the matter. After an examination of the evidence complained of we are of the opinion that its admission was not error.

The witnesses all testified from personal observations made by them, but it is insisted, in some instances, at least, such observations were so far anterior to the time of the trial that the parties making the same were not qualified to render an opinion as to the plaintiff's sanity at the time of the trial. The accident occurred April 6, 1900, and *præcipe* was filed in this case and summons issued May 25, 1900. The first verdict was had February 27, 1902, and the second verdict was rendered September 26, 1902. A large number of witnesses testified as to the unsoundness of plaintiff's mind, basing their opinions upon acquaintance with and observations of the plaintiff for a greater or less period, but all for a suffi-

cient period to render such witnesses competent to testify. Many of these witnesses knew the plaintiff from long before the accident, and had been thrown in contact with him, more or less frequently, practically up to the time of trial, and they testified to the changed manner and condition of plaintiff after the accident, some of them stating that the condition seemed to continually grow worse. Among the witnesses were members of the police force who had met and had been more or less intimately associated with the plaintiff while in the discharge of his duties as policeman. Several members of the appellee's family also testified. Some dozen or more witnesses, besides the examining and attending physicians, testified that they believed plaintiff to be of unsound mind. The testimony of some of these, however, was confined to incidents occurring within a comparatively short time after the accident, and the appellant urges that such incidents were too remote from the trial to furnish a basis for opinions as to sanity at the time of the trial. We regard this contention without merit. The witnesses having testified to instances amply sufficient to furnish a basis for opinions, and these incidents occurring after the time of the accident from which it is claimed plaintiff's unsoundness of mind resulted, we think their expressions of opinion were competent testimony for the jury to consider and give such weight as it deemed proper.

The rule announced in *Craig* v. *Southard,* 148 Ill. 37, on the question of opinions as to sanity, seems to be well established by the authorities of this State and supports the conclusion above announced. In that case we said (p. 47) : "All who have had means of observation are permitted to testify concerning the existence and measure of capacity, so far as it may tend to shed light upon the matter at issue, and may give their opinion touching the testator's mental capacity, based upon such observation. * * * The weight or effect of such opinions will necessarily depend upon the means of knowledge of the witness, and the facts upon which they are based, possible of delineation, and the capacity of the witness to correctly interpret what he has observed. It is

everywhere, therefore, held, that the facts upon which the opinion is predicated may be gone into, either to sustain and give force to the opinion or to discredit it, and the opinion will be entitled to much, little or no weight, depending upon the facts upon which it is predicated and the intelligence and character of the witness.—*Roe* v. *Taylor,* 45 Ill. 485; *Upstone* v. *People,* 109 id. 169; *American Bible Society* v. *Price,* 115 id. 623."

In *American Bible Society* v. *Price, supra,* the rule was announced as follows (p. 642) : "It was competent to admit in evidence the opinions of witnesses who were not experts, touching the testator's sanity, first stating their observations on which their opinions were based." And again, in *Roe* v. *Taylor, supra,* we said, referring to non-expert testimony as to sanity (p. 489) : "After detailing the facts on which an opinion is based they may give to the jury that opinion, to be received by them and to be valued by them according to the intelligence of the witness and his own capacity to form the opinion."

The cases cited by appellant do not state a rule in conflict with the above, nor do they go to the extent of holding that this court will reverse a case because a lay witness was permitted to state his opinion without showing such knowledge as this court would require if trying the case. If a non-expert witness gives an opinion without sufficient knowledge of facts to support it, opposing counsel may, upon cross-examination, show that it is of little value and should have little weight. It may be attacked upon argument, and the jury may be instructed that the weight to be given to such opinion depends upon the intelligence of the witness, his acquaintance with the person whose mental condition is the subject of investigation, his means of observation and his veracity. The case of *Grand Lodge I. O. M. A.* v. *Wieting,* 168 Ill. 408, merely holds it was not reversible error for the trial court to refuse to allow a witness to give his opinion where the witness failed to show sufficient knowledge or acquaintance with the person whose condition was being inquired

into. *Roe* v. *Taylor,* 45 Ill. 485, was as to the competency of non-experts to give opinions in cases where mental status was the subject of inquiry, and holds such evidence competent and states the rule as herein held. *Graybeal* v. *Gardner,* 146 Ill. 337, was the consideration by this court of the weight of the evidence in a chancery case, and does not touch upon the question before us. The cases referred to mostly relate to the mental ability of a testator to make a will. In such cases the inquiry is principally directed to a particular day, and often to the very moment, of making the will, when the result may hinge upon a lucid interval. As we have before said, such was not the case at bar, but this was of the general mental condition of appellee before and after the injury, to determine the effect of the injury.

It is next urged by appellant that for the misconduct of counsel for appellee this case should be reversed. The misconduct referred to was a certain statement made by counsel in the presence of the jury. Counsel for appellee had asked a rather illiterate witness to describe the appearance of plaintiff at a certain meeting, and a portion of the reply was, "He looked so wild like he was going to chew me," and opposing counsel objected. A colloquy between the court and counsel on each side ensued, and with reference to the remarks made the court said, "I hoped we would get along without them and be satisfied," and then counsel for appellee remarked, "I was satisfied at the end of the other trial." Counsel for appellant objected, and the court said, "Yes, it is improper." Counsel for appellant then stated that notwithstanding the criticism of the court he desired to take an exception, and now urges that reversible error was committed. We do not think so. While this remark here alluded to merited the criticism of the court, we do not think it should work a reversal of this case, since the verdict seems to be well sustained in other respects. This remark, we think, could not have been so serious as counsel for appellant contends. No mention is made as to the amount of the verdict in the former trial. In *Chicago and Alton Railroad Co.* v. *Dillon,* 123

Ill. 570, we held that even though counsel for plaintiff, both in his opening statement and argument, referred to the number of trials had in the case and their results, the facts were such as not to warrant a reversal of the plaintiff's judgment. In the present case the ruling of the court was in appellant's favor, and the regulation of the conduct of counsel in the argument of cases being largely in the discretion of the court, we think the court's discretion in this particular was so exercised as to obviate all serious objection.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*