CHRISTINA BUCHANAN *et al.*

*v.*

BARBARA McLENNAN *et al.*

*Filed at Ottawa November 20, 1882.*

1. WILL—*validity determined from all the evidence on both sides.* On a bill to contest the validity of a will, the defendants read in evidence the proofs made by the attesting witnesses in the probate court, and examined one of such witnesses, and rested, whereupon the complainants introduced evidence to sustain their bill, and after which defendants gave rebutting evidence, without objection: *Held,* that this court must consider the weight of all the evidence introduced by both parties, on the question of a new trial.

2. NEW TRIAL—*on the evidence.* Where the evidence is voluminous, and conflicting as to questions of fact, it is the province of the jury to consider, weigh, and reconcile the same as far as they can, and where they are unable to reconcile the same, to reject such portions as they may believe not entitled to credence; and in such case this court will not grant a new trial where the evidence is such as to justify a verdict either way.

APPEAL from the Circuit Court of Stark county; the Hon. N. M. LAWS, Judge, presiding.

Mr. C. C. WILSON, for the appellants:

When a bill is filed to set aside a will, the burden of sustaining the will is cast upon those averring its validity, and the question is tried *de novo. Tate* v. *Tate,* 89 Ill. 42; *Carpenter et al.* v. *Calvert,* 83 id. 62.

It being a trial *de novo,* it was obligatory upon the proponents of the will to establish its validity in every particular.

The attestation must be proved, the same as if on appeal from the county court. *Crowley* v. *Crowley*, 80 Ill. 473.

The party supporting the will must prove, by at least two witnesses, that the will was executed by the testator in their presence, or that he acknowledged the execution to be his act and deed, and that the testator was at the time of sound mind and memory,—and when this is done a *prima facie* case is made, and not before; and then the party assuming the want of validity must establish the opposite with reasonable certainty,—or, in other words, if the complainants can show, by a preponderance of evidence, the want of any one of the necessary elements which make a valid will, the will must fall. Jarman on Wills, (5th Am. ed.) 104; Redfield on Wills, 30-50; *Perkins* v. *Perkins*, 39 N. H. 163; *Brooks* v. *Barrett*, 7 Peck, 94; *Turner* v. *Cook*, 36 Ind. 129; *Dickey* v. *Carter*, 42 Ill. 376; *Crowley* v. *Crowley*, 80 id. 473; *Carpenter* v. *Calvert*, 83 id. 71.

Mr. JAMES H. MILLER, and Mr. MILES A. FULLER, for the appellees:

It is not necessary on the trial of the issues in such a case as this, to prove by the subscribing witnesses the execution of the will, or that the testator was of sound mind, or free from undue influence; but the facts may be proved by any other witnesses as well, and even against the evidence of the subscribing witnesses. *Rigg et al.* v. *Wilton*, 13 Ill. 19.

It is not necessary that witnesses be present when the will is signed by the testator. All that is necessary is, that he shall acknowledge it to be his will. *Holloway* v. *Galloway*, 51 Ill. 162.

Appellants' solicitor puts a wrong construction upon the question of proof of the issues in this cause, when he relies upon the case of *Crowley* v. *Crowley*, 80 Ill. 472. There, neither of the witnesses could identify the instrument of writing as the one they had attested, nor could they testify

that the testator was of sound mind.    This being an issue in chancery, we made a *prima facie* case by the certificate of the evidence of probate of the will.    *Holloway* v. *Galloway*, 51 Ill. 161.

Mr. Justice Walker delivered the opinion of the Court:

A bill was filed by appellants to vacate and set aside the last will of John McLennan, deceased, on the ground of his mental incapacity, and of the undue influence of his son John K., in the disposition of his property by the will.    By it the testator devised and bequeathed his property to the various members of his family.    To his son Finley, and to the heirs of his body lawfully begotten, a tract of 80 acres of land; to his son John K., 180 acres; to his son Duncan, 260 acres, embracing the homestead, but subject to an annuity of $200 to be paid to the widow of the testator.    To his daughters he bequeathed to each sums of money ranging from $500 to $1200.    To his widow, $200, to be paid annually, and charged on the land devised to Duncan.    He, by the will, appointed his son John K. his executor.    It was, after his death, duly filed and probated in the proper office.    The will bore date the 31st day of August, 1872, and the testator died on the 20th of the following September, and the will was probated on the 30th of the latter month.    Afterward, his widow renounced the provisions of the will, and took her dower and share under the statute, and the executor settled the affairs of the estate.    About six years after the testator's death, his son John K. died, and by will he devised the land devised to him by his father, to his brother Duncan. In October, 1880, Duncan died intestate, leaving Margaret McLennan, his widow, and an infant son, surviving him, and on the 2d day of March, 1881, this bill was filed.    Margaret McLennan answered, denying the allegations of the bill, and a guardian *ad litem* answered for John McLennan, the infant

heir.   The other defendants did not answer.   Issues of fact were made and submitted to the jury:

*First*—Is the writing purporting to be the last will of John McLennan, deceased, his last will and testament, or not.

*Second*—Was he at the time of the execution of the instrument, purporting to be his last will, of sound mind and memory.

*Third*—Was he at the time of the execution and attestation of the writing purporting to be his last will, unduly influenced in relation thereto by John K. McLennan.

On these issues of fact a trial was had, resulting in a verdict that the instrument was the last will of the testator, and complainants bring the record to this court and assign errors, and ask a reversal of the decree rendered on the verdict.

It is first insisted that defendants, by producing and reading in evidence the proof made by the attesting witnesses in the probate court, and the testimony of one of the attesting witnesses, did not make a *prima facie* case, so as to shift the burthen of proof to the complainants to prove the invalidity of the will, as alleged in the bill.   This was held to be such evidence in the case of *Holloway* v. *Galloway*, 51 Ill. 159.   But if this were not so, when defendants had made this proof and rested their case, appellants accepted the burthen of proving the truth of the allegations of their bill, and introduced their proof, and after they had closed their evidence, appellees, without objection, introduced rebutting evidence; so we must consider the weight of all the evidence introduced by both parties.   The evidence is voluminous, and is conflicting, and portions seem irreconcilable.   The jury had before them and saw the witnesses.   They had every and superior means to ours to weigh, compare and properly estimate the value of the evidence.   They could judge, by the intelligence and demeanor, as to the proper weight· to be given to the testimony of all the witnesses.   Of these means

we are deprived.    The judge who tried the case was satisfied
with and acted upon the verdict.    Had it not been satisfac-
tory to him, the plain requirement of duty would have com-
pelled him to set it aside, but failing to do so, we must
presume he was satisfied with the finding.    Nor does a care-
ful consideration of the evidence show that the finding is
clearly against its weight.    It is clear, beyond dispute, that
had appellees' testimony been alone before the jury, they
could have found no verdict different from that which they
did; and the same is equally true of the evidence introduced
by appellants, had it been unopposed.    In this conflict it was
within the province of the jury to fully consider, weigh and
reconcile it, so far as that could be done, and where they were
unable to do so, then to reject such portions as they believed
were not entitled to credence.    We must presume that in the
discharge of their duty they did this, and under well and
long established rules of practice we are unable to interfere.

It is insisted that the jury were misled by some of the
instructions given for appellees.    As a series they present the
law of the case fairly, and we think the jury could not have
been misled by them.    Some criticism is made by appellants
to a number of them, but we think the objections urged are
rather refined.    Had the objections pointed out not been re-
moved by others in the series, we are not prepared to say
that they would, even in a case like this, have required a
reversal.    Had the verdict been either way, we should not
have been inclined to reverse.

Being unable to say that error has been shown on this
record, we must affirm the decree.

*Decree affirmed.*