THEODORE A. HARP *et al.*

*v.*

THOMAS A. PARR *et al.*

*Opinion filed November 1, 1897.*

1. MENTAL CAPACITY—*question of testator's mental capacity is one of fact.* In a suit to contest a will, the question whether the testator was possessed of sound mind and memory at the time the will was executed is one of fact, to be determined by the jury under proper instructions.

2. SAME—*one competent to transact ordinary business is competent to make will.* A testator who, at the time of making his will, was possessed of sufficient mental capacity to transact ordinary business and to comprehend the act of disposing of his property, is competent to make a will.

3. UNDUE INFLUENCE—*testator's declarations admissible in rebuttal.* In a suit contesting a will on the ground of undue influence, the declarations of the testator made before the execution of the will are admissible, by way of rebuttal, to show that he had disposed of his property in conformity with his expressed intentions.

4. SAME—*effect of failure of proof to connect beneficiary with making of will.* Failure of the complainants in a suit contesting a will for undue influence, to connect the beneficiary with the making of the will, either by agency, procurement, suggestion or knowledge, is a strong circumstance indicating the absence of undue influence.

5. EVIDENCE—*fraud and substitution—parties other than subscribing witnesses may testify.* The testimony of a disinterested party who drew up the will is admissible in evidence in a suit contesting the same on the ground of fraud and substitution, to show that the will, when probated, was in the same form and condition, as to the paper upon which it was written, as it was when executed.

6. SAME—*what not sufficient to sustain charge of fraud and substitution.* The testimony of one subscribing witness that he thought the paper upon which the will was written was different in shape from that produced as the will is not sufficient to sustain a charge of fraud and substitution, as against the testimony of the other subscribing witness and of the party who drew the will that the paper produced as the will was of the same shape as that upon which the will was written.

7. SAME—*fact that will conforms to testator's expressed intentions is against theory of forgery.* The fact that a will disposes of the testator's property in accordance with his previously expressed intentions is a circumstance going to contradict a theory of forgery, fraud and substitution.

8. WILLS—*term "credible," as applied to subscribing witnesses, means "competent."* The term "credible," as applied to the subscribing witnesses of a will by section 2 of the act on wills, (Rev. Stat. 1874, p. 1101,) means "competent."

9. SAME—*effect where one subscribing witness is a beneficial devisee.* Under section 8 of the act on wills (Rev. Stat. 1874, p. 1103,) the fact that a subscribing witness is a beneficial devisee renders the devise to him null and void unless there are sufficient subscribing witnesses without him; but such person is a competent subscribing witness as to the residue of the will.

10. SAME—*testator's acknowledgment need not be manifested by words.* The fact that one subscribing witness does not remember to have seen the testator's signature nor heard his express acknowledgment will not invalidate the will, where the testator's intention to acknowledge the instrument as his will is manifested by his conduct in standing silently by while the person who drew the will, acting by his direction, explained the nature of the instrument to the subscribing witness and requested him to attest it.

11. SAME—*what makes a prima facie case in favor of validity of will—burden of proof.* The introduction in evidence of the affidavits of the subscribing witnesses, made when the will was probated, coupled with the oral testimony of one subscribing witness and of the party who drew up the will, in support of the same, makes a *prima facie* case in favor of the proponents, and casts upon the contestants the burden of proving the will invalid.

12. SPECIAL INTERROGATORIES—*usual interrogatories in will contest need not be submitted to counsel.* In a will contest involving mental capacity and undue influence, the usual interrogatories submitted to the jury by the court of its own motion upon those questions are not such "special interrogatories" as the statute requires to be submitted to counsel for inspection before the argument.

13. APPEALS AND ERRORS—*objections not made below cannot be first raised on appeal.* An objection that the proponents of a will, in a suit contesting the same, introduced in evidence the original affidavit of the subscribing witnesses, made at the time of the probate of the will, instead of a copy of such affidavit, comes too late when first made on appeal.

14. SAME—*when verdict establishing validity of will will be sustained on appeal.* A verdict sustaining the validity of a will will not be reversed, on appeal, on the ground that it is not supported by the evidence, where, though there is irreconcilable conflict, the evidence of the successful party, considered by itself, is clearly sufficient to sustain the verdict.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This is a bill in chancery, filed on June 23, 1894, by plaintiffs in error to contest the will of Samuel D. Winget, who died in McLean county on July 9, 1891, leaving a widow, Hannah M. Winget, and no child or descendant. One of the plaintiffs in error is a nephew, one is a brother, one is a sister, and one is a brother-in-law of the deceased testator. Letters testamentary were issued to the said Hannah M. Winget, the executrix named in the will, who acted as such until her death on April 25, 1892. On May 12, 1892, letters of administration *de bonis non* with the will annexed were issued to Marion L. McClure. The defendants below, defendants in error here, were Thomas A. Parr, the principal devisee in the will, McClure, administrator *de bonis non* aforesaid, and the administrators of Hannah M. Winget. Answers were filed by said Thomas A. Parr and said McClure. There was a disclaimer by the administrators of Hannah M. Winget.

The will bears date February 6, 1890. By the terms of the will the testator bequeathed all his property, real and personal, to his wife, Hannah, to have and control the same, and rent the same, during her life, and after her death he bequeathed his property to the defendant in error, Thomas A. Parr, son of Richard Parr, deceased, who was a brother of his wife, to have and to hold the same during his lifetime, and forbidding any transfer by him of the land; after the death of Thomas Parr, the testator bequeathed his entire property to Thomas A. Parr's bodily heirs, if he should have any; if not, the same to fall back to the heirs of the testator and his wife. In other words, the will gave a life estate to the widow, and, after her death, a life estate to the nephew, Thomas A. Parr, with remainder to his children, if he should have any, but if he had none, then to the heirs of the testator and of his wife. The will was admitted to probate in the county court of McLean county on July 15, 1891. The will was signed by Samuel D. Winget; and the subscribing witnesses thereto were Nathan J. Parr and William L.

Smith, both of Cooksville, Illinois. The names of the subscribing witnesses are subscribed to an attestation clause which is in the following words: "Signed by the said testator, Samuel D. Winget, and acknowledged by him to be his last will and testament in the presence of us, present at the said time, and subscribed by us in the presence of the said testator and of each other at Cooksville, McLean county, Illinois."

The affidavit attached to the will when it was admitted to probate, is as follows:

"STATE OF ILLINOIS, } ss.
    *McLean County.*    }

"Nathan J. Parr and William L. Smith, being duly sworn in open court, do depose and say, that they were present at the execution of the last will and testament (hereunto attached) of Samuel D. Winget, late of said county, deceased; that said Samuel D. Winget acknowledged to them, that he had subscribed said will, and heard him publish and declare the same to be his last will and testament; that they believed, and still do believe, that said testator at the time of executing the same was of full age, of sound mind and memory, and under no restraint; that they signed said will as witnesses thereto, in the presence and at the request of said testator and in the presence of each other."

This affidavit is signed by Nathan J. Parr and William L. Smith, and was subscribed and sworn to in open court on July 15, 1891, before the clerk of said county court by his deputy.

The bill as originally filed attacked the will upon the two grounds, that the testator was not of sound mind and memory when he executed the will, and that he was prevailed upon to execute it through undue influence exercised over him by the defendant in error, Thomas A. Parr, and by his wife, the said Hannah M. Winget. The bill as subsequently amended charged, that the paper purporting to be the will, was not the same paper, which Samuel D. Winget signed and attested as his will. The amended bill also charged, that said paper was not reduced to writing and signed by the testator or by any person in

his presence and by his direction, and that it was not attested by two credible witnesses, and that it was not signed by the testator or acknowledged by him to be his act and deed, in the presence of two credible witnesses, or in the presence of two disinterested witnesses, and that one of the two witnesses, by whom it was witnessed, is a contingent devisee under the provisions of the will.

The case was tried in the court below before the court and a jury. Many witnesses were examined upon the questions of fact involved, and many instructions were given on behalf of both parties, and some instructions, asked by the plaintiffs in error, were refused. The jury returned a verdict, finding that the writing was the will of the deceased, and that he was of sound mind and memory, and not unduly influenced to make the same. Motion for new trial was overruled, and a decree was entered, sustaining the will, and in accordance with the verdict. The present writ of error is sued out from this court for the purpose of reviewing the decree so entered.

Upon the trial the defendants below, defendants in error here, introduced the original affidavit of the witnesses, Parr and Smith, as above set forth, and also the will, the substance of which has been above stated. The testimony in regard to the execution of the will was substantially as follows: Hugh W. Warner, a merchant of Cooksville, testifies: that he had known the deceased fifteen or twenty years; that, about three months before the will was drawn, the testator requested him to write his will; that, about ten days before the will was written, he consented to draw it; that the testator wrote on a small piece of paper what he wanted in his will, and that from this memorandum the witness wrote the will; the witness then further proceeds as follows: "He (the testator) came to the store and signed the will in the presence of William L. Smith and Nathan Parr; after it was signed I folded it up and put it in an envelope and wrote across it 'Will of Samuel Winget,' and gave it to him;

*    *    * after I gave him the will, he said that it was satisfactory, and just what he wanted; I read it to him, and I think it was read to him the day before it was signed; his signature is to the will; I saw him write it; before the will was written, I told him, it would be well to tell the men what they were signing; I either told them before the will was signed, or Mr. Winget; I do not remember of there being anything said of signing as witnesses; he spoke to them privately; Parr and Smith both signed it; I know Smith's signature; I cannot say positively I saw those men put their names on the paper, but they were there, and signed it before me; they both signed it with the understanding that they were signing Mr. Winget's will; Parr and Smith signed after Mr. Winget signed it; I dictated that part myself; *    *    * I wrote the will the previous day to the day it bears date; the whole thing is in my handwriting except the signatures at the bottom; *    *    * the writing is in the same condition as it was the day he signed it; when Winget came to sign it, Smith was in the store, and I think Winget went after Parr; Smith and myself were close to the desk when Winget signed the writing; we were right along the front of the desk; he signed it after Parr came in; Parr was also close to the desk; *    *    * this sheet of paper on which the will is written is in the same condition as when they signed their names; this (the bottom and top sheet of the paper) was put together before it was all written."

William L. Smith identifies his signature as subscribing witness, and testifies as follows: "The will was signed in the store at Cooksville at the desk where we did business; we were at work in the store as usual when Winget and Parr came in, and Winget said: 'Come back to the desk, we want to attend to some business;' I went back, and Warner produced what we were told was Winget's will; that was in the presence of Winget; my recollection is that Winget signed it, then Parr, and then myself; we

were all in touching distance; I heard Winget ask Parr
to sign as a witness; Parr was close enough to hear when
I was asked to sign it;   *   *   *   never talked to Mr. Win-
get about the making of his will; do not remember of see-
ing the paper until we signed it; saw Mr. Winget put his
name there; he told me he had a paper he wanted me to
sign; said it was his will and wanted me to witness it; he
signed it before I did; the paper was in the same condi-
tion when I put my name on it as it is now, only it was
not mussed up as much; I saw no other instrument before
I signed this one; it is not true that, at the time Parr was
in there, Winget did not sign the paper; we were all there
when it was signed; Winget did not say anything to Parr
in my presence that I remember of; we came in together."

The witnesses, Warner and Smith, were called by the
defendants upon the opening of the case.

Nathan J. Parr, who was a brother of Mrs. Winget, the
wife of the deceased, was called as a witness by the com-
plainants below, the plaintiffs in error here, and testified
as follows: "I signed the paper purporting to be his will
as a witness; I signed that paper along in the spring of
1889 or 1890, I cannot say positive; I also signed the affi-
davit now attached to that paper; I was in Judge Myers'
office when it was signed; Judge Myers, Mrs. Winget and
Dougherty were present; when I signed the alleged will
I was in Warner's store; that is my signature; if that is
the paper it is in different form; I put my signature on
a sheet of foolscap paper; it looks as though there were
two sheets pasted together there; there was only one
sheet of paper; I only signed my name once; there was
no other name on the paper when I signed it; no one else
signed it in my presence; no one read over to me the
writing before I signed my name; Mr. Winget did not say
anything about what the paper was; did not say anything
to me about signing it; do not think that Winget's or
Smith's name was on the piece of paper when I wrote
my name; do not think he wrote his name in my presence;

do not think the paper was in the same shape as it was when I signed it; it was in different shape; the paper I signed looked like a sheet of foolscap."

The above is the direct examination of the witness. Upon his cross-examination Parr said: "I was hauling corn to Cooksville, and this afternoon I was there with a team, and Winget came to the elevator where I was hauling the corn, and said: 'I would like to have you come to the store a little bit;' I went over; when we entered the store at the south end of the building, Smith and Warner were at the north end; when we went up Warner said: 'Winget wants you to sign this paper;' Warner said it was Winget's will, and Winget did not say anything, but he stood six or eight feet away; I signed it at Warner's request; that is my signature; Warner brought it to me, and said it was Winget's will, 'we want you to sign it;' I signed it and we went away; I cannot say whether this writing is on foolscap paper or not." On his re-direct examination Parr said: "When Warner said it was Winget's will, Winget was behind me; there was a counter and a pile of overshirts between Winget and myself; he was a little hard of hearing; do not know whether he heard what Warner said or not."

CHARLES M. PEIRCE, W. B. CARLOCK, and FIFER & BARRY, for plaintiffs in error:

A paper that has not been signed by the testator, or by some one in his presence and by his direction, and attested in his presence by two or more witnesses, has no force or effect as a will, under our statute. *Rigg* v. *Wilton*, 13 Ill. 19.

The two subscribing witnesses must concur in their opinion of the sound mind and memory of the testator. *Walker* v. *Walker*, 2 Scam. 291; *Crowley* v. *Crowley*, 80 Ill. 469; *Weld* v. *Sweeney*, 85 id. 50.

The two subscribing witnesses must swear that the testator was of sound mind and memory at the time he

attested the document purporting to be his will, before it can be admitted to probate. *Allison* v. *Allison*, 46 Ill. 61; *Weld* v. *Sweeney*, 85 id. 50.

Where one of the subscribing witnesses cannot say the testator was of sound mind and memory the proof is defective. *Allison* v. *Allison*, 46 Ill. 61.

The subscription must be made by the testator in the presence of each of the witnesses, or must be acknowledged by him to each of them. 2 Rice on Evidence, 1210, and cases cited.

The burden of proof is on the party affirming the execution and validity of the will. He must prove that the contested paper is the last will and testament of the testator. *Bevelot* v. *Lestrade*, 153 Ill. 625; *Moyer* v. *Swygart*, 125 id. 262; *Tate* v. *Tate*, 89 id. 42.

A devisee under a will is not a competent witness to prove the execution of the will. *Fisher* v. *Spence*, 150 Ill. 253; *Crowley* v. *Crowley*, 80 id. 469; 1 Jarman on Wills, 188; Horner on Probate Law, 71.

The competency of an attesting witness to a will is to be tested upon the state of facts existing at the time of such attestation, and not that existing at the time the will is presented for probate. *Fisher* v. *Spence*, 150 Ill. 253; *In re Ingalls*, 148 id. 287.

A subscribing witness to a will who has a beneficial interest therein is incompetent to establish the will in probate, and after renouncing under the will he cannot establish the will as to the other bequests and devises. *Fisher* v. *Spence*, 150 Ill. 253.

The attesting witnesses must see the testator's signature at the time of the attestation; and it is not sufficient that at his request they sign an attesting clause to a will so folded that they cannot see whether it is signed or sealed, although he tells them that it is his will and that it is ready for their signatures. *In re Mackey's Will*, 110 N. Y. 611; 44 Hun, 571; *Mitchell* v. *Mitchell*, 16 id. 97; 77 N. Y. 596; *Lewis* v. *Lewis*, 11 id. 221.

In a proceeding to contest a will, a legatee under the will is a competent witness to prove the incompetency of the testator to make a will. *Keithley* v. *Stafford*, 126 Ill. 507; *Muchmore* v. *Jeffries*, 25 id. 180.

The proponents of the will did not introduce both the attesting witnesses, and therefore did not make out a *prima facie* case in the first instance, and on that account the burden of proof was on them to the end of the trial. *Craig* v. *Southard*, 148 Ill. 37.

If the witness was interested at the time of the attestation, and continued so, the party not then knowing the fact, the attestation is treated as a nullity. 1 Greenleaf on Evidence, 668.

BENJAMIN & MORRISSEY, (J. H. ROWELL, of counsel,) for defendants in error:

The statute does not require the acknowledgment to be in language. Any act which indicates the same thing with unmistakable certainty will answer as well. The entire transaction may amount to an acknowledgment as distinct and satisfactory as language could have made. The words of acknowledgment may proceed from another, and will be regarded as those of the testator where the circumstances show that he adopted them, and that the party using them in his presence was acting for him with his assent. *Allison* v. *Allison*, 46 Ill. 61; *Nickerson* v. *Buck*, 12 Cush. 332; *Dewey* v. *Dewey*, 1 Metc. 354; *Peck* v. *Cary*, 26 N.Y. 9; *Gilbert* v. *Knox*, 52 id. 129; *In re Nelson*, 141 id. 152; *Inglesant* v. *Inglesant*, 3 P. & D. 172.

If the testator either signed or acknowledged the will in the presence of the subscribing witnesses it was sufficient. *Brownfield* v. *Brownfield*, 43 Ill. 148.

The question whether a will has been executed with all the proper formalities is one of law, and not of fact which a jury can consider. *Graybeal* v. *Gardner*, 146 Ill. 338; *Roe* v. *Taylor*, 45 id. 485.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first question in the case is, whether or not the testator was of sound mind and memory when he executed the will in question. This was a question of fact to be determined by the jury upon the evidence under the instructions of the court. We have carefully examined the evidence, and find no reason to disturb the verdict and judgment below so far as this question is concerned. It was peculiarly within the province of the jury to decide upon the testamentary capacity of the deceased; and their verdict was clearly correct. Some of the witnesses say, that the testator complained at different times of pain in his head, and this class of testimony is referred to by counsel for plaintiffs in error, as indicating that his mind was affected. The physicians, however, say that, although kidney trouble was the main disease that caused his death, he was clear in his mind, except during the three or four days before his death, and that the head trouble, of which he complained, was nothing more than headache, or neuralgia. The testimony upon the whole shows very conclusively, that the deceased was a careful, painstaking business man, and that, at the time of the execution of his will, and for some time theretofore and thereafter, up to a few days before his death, he had sufficient mental capacity to knowingly and understandingly transact the ordinary business of life, and also to comprehend the act of disposing of his property. This being so, the presumption arises, that he was capable of doing any act requiring no greater capacity, and, therefore, capable of making a will. (*Craig* v. *Southard*, 148 Ill. 37; *Taylor* v. *Cox*, 153 id. 220).

*Second*—The evidence in the case is as far from showing that any undue influence was exercised over the testator in the matter of making his will, as it is from showing that he was not of sound mind and memory. Indeed, we do not understand counsel for plaintiffs in error to insist

very strenuously in their brief that the charge of undue influence is sustained by the proofs. The deceased, after giving in his will a life estate in all his property to his widow, provided that, after her death, the defendant in error, Thomas A. Parr, should have a life interest in the property, and that the remainder should go to his children, if he had any; if not, to the heirs of the testator and his wife. Thomas A. Parr was the nephew of the testator's wife, the child of a deceased brother of hers. The testator and his wife took this boy, Thomas, when he was four years old, into their family, and adopted him as their child, though no legal ceremony of adoption was performed. He lived with them for many years, and then went to the far west to make his own fortune. He was absent in the west when the testator died, and had been so absent for two or three years theretofore. It cannot be said, that he, during this time, exerted any influence upon the mind of his aunt's husband. The testimony tends to show, that the deceased entertained a great affection for this nephew of his wife, and spoke with regret of his absence, and also regretted his silence when he failed to write. The proof also shows, that, for years before he made his will, he made declarations to the effect that he was going to leave his property to this nephew of his wife, as he had no children of his own, and also, that, after he made his will, he very often, in conversation with his neighbors, made the statement, that he had already made a will, devising his property in the manner in which the will disposes of it. The terms of the will are consistent with all of these proven declarations as to his intentions. When it is charged, that a will has been executed through undue influence, the declarations of the testator made before its execution are admissible, by way of rebuttal, to show his intention as to the disposition of his property; because a will, made in conformity with such declarations, is more likely to have been executed without undue influence, than if its

terms are contrary to such declarations. The presumption also is in favor of the validity of the will, when the person, who is provided for therein, is one with whom the testator had maintained intimate and affectionate relations during his life. Again, it is a strong circumstance, tending to show the absence of any undue influence, when the proof fails to connect the beneficiary in the will in any way with the making of the will, either by agency, procurement, suggestion, solicitation or knowledge of its execution. (*Goodbar* v. *Lidikey*, 136 Ind. 1; *In re Douglass' Estate*, 162 Pa. St. 567).

*Third*—It is furthermore claimed by plaintiffs in error, that the paper, produced as the will of Samuel D. Winget, deceased, was not the same paper, which he signed as his will. This contention is not sustained by the proofs, and rests more upon suspicion and insinuation than upon real facts. It does appear, that the will was written on one side of two leaves of foolscap paper, pasted together endwise; the upper part of the under and lower leaf being trimmed off a short distance below the unruled top margin, thus affording ruled lines and regular spaces for all the writing on the lower leaf. From this circumstance plaintiffs in error charge, that one leaf was substituted for another; but we do not think that the manner, in which the two leaves are pasted together, affords any ground for such a suspicion. Warner testifies that, before he wrote the will, which was executed on February 6, 1890, he had written another will for the testator, which, however, the testator was not satisfied with, and did not execute. It is also true, that Nathan J. Parr, one of the subscribing witnesses, makes the following statement: "I do not think the paper was in the same shape as it was when I signed it. It was in different shape. The paper I signed looked like a sheet of foolscap." It must be remembered, that Parr was not a disinterested witness. He had an interest in overthrowing the will rather than in sustaining it. He was an only

brother of Mrs. Winget. As Winget had no children, if he had died intestate, his wife would have inherited one-half of his real property, and all of his personalty. Upon her death, as she left no children, her brother would inherit a portion of the estate, inherited by her from her husband. In view of the fact, that he is thus an interested witness, his statement, to the effect that he *thinks* this paper, upon which the will was written, was in a different shape from the paper produced as the will, should not be regarded as sustaining a charge of fraud and substitution as against the positive testimony of the two witnesses, Warner and Smith. Warner and Smith both swear, that the paper produced is the paper, which was executed as the will, and that it is now in the same condition as it was on the day when the will was signed. Indeed, it is not necessarily an objection to a will, that it is written on several separate pieces of paper. Such fact is not fatal to the validity of the will. All that is required is, that all the separate sheets of paper should be in the room, and in the presence of the attesting witnesses. (*Bond* v. *Seawell,* 3 Burr. 1773; *Ela* v. *Edwards,* 16 Gray, 91; *Gass* v. *Gass,* 3 Humph. 278; *Wikoff's Appeal,* 15 Pa. St. 281). Moreover, the fact already referred to, that the will in its general provisions corresponded with the declarations of the testator as to his intentions in regard to the disposition of his property, is a circumstance which goes to contradict the theory, that there was any forgery of the will now under consideration. Again, the probate of the will, which was here shown, is conclusive of the question of fraud, until such probate is reversed, or otherwise legally vacated. (*Bowen* v. *Allen,* 113 Ill. 53). Upon the question as to whether there was any fraud, compulsion, or other improper conduct, sufficient to invalidate or destroy a will, the testimony of other parties than the subscribing witnesses may be heard. (*Andrews* v. *Black,* 43 Ill. 256). Therefore, the testimony of Warner, who drew the will at the request of the testator, and who had no

interest in the matter so far as this record shows, was competent and properly introduced, in order to show, that the will, as admitted to probate, was in the same shape and condition as to the paper upon which it was written, as when it was executed.

*Fourth*—It is said, that the will was not attested by two credible witnesses, as is required by the second section of the Statute of Wills. The basis of this contention lies in the fact, that Nathan J. Parr, one of the subscribing witnesses, and who swore to all the facts, necessary to the admission of the will to probate before the county court when it was there admitted to probate, is a contingent devisee under the provisions of the will. We have held in a number of cases, that the expression in the statute: "credible witness," means competent witness. In other words, a credible witness, within the meaning of the Statute of Wills, is a competent witness. (*In the matter of Noble*, 124 Ill. 266; *Fisher* v. *Spence*, 150 id. 253). Parr is said to be incompetent as a subscribing witness to the will, because of his interest as such contingent devisee. The will provides, that, in case of the death of Thomas A. Parr without children or bodily heirs, the property shall go to the heirs of the testator and his wife; and Parr was one of the heirs of the testator's wife. This objection, however, is removed by section 8 of the Statute of Wills, which provides, that "if any beneficial devise, legacy or interest shall be made or given in any will, testament or codicil, to any person subscribing such will, testament, or codicil as a witness to the execution thereof, such devise, legacy, or interest shall as to such subscribing witness, and all persons claiming under him, be null and void, unless such will, testament, or codicil be otherwise duly attested by a sufficient number of witnesses exclusive of such person, according to this act; and he or she shall be compellable to appear and give testimony on the residue of such will, testament or codicil in like manner as if no such legacy, devise or bequest had been made."

(3 Starr & Cur. Stat.—2d ed.—p. 4039). Here, the devise to the subscribing witness, Parr, is a beneficial devise, and, therefore, section 8 makes the devise void, and makes the subscribing witness, Parr, a competent witness to the residue of the will. (*Fisher* v. *Spence, supra*).

*Fifth*—It is furthermore said, that the subscribing witness, Parr, did not see the signature of the testator, and did not hear the testator acknowledge the signature of the will to be his. We have held that it is sufficient, if the testator, in the presence of the subscribing witnesses, acknowledges the will to be his act and deed. Our statute requires the testator to acknowledge the will to be his act and deed, although, in some States the statute requires the testator to acknowledge the signature to the will to be his. Where a testator requests the witness to attest his will, this is sufficient to authorize the inference, that he had executed the paper as a will, and is equivalent to an acknowledgment, that he had signed the paper as a will. (*Hobart* v. *Hobart,* 154 Ill. 610). Here, the testimony of Smith and Parr clearly shows, that the will was signed by the testator, and that the signature to it is in the handwriting of the testator. The mere fact, that one of the subscribing witnesses does not remember seeing the signature of the testator will not invalidate the will, when the conduct of the testator, at the time of its execution, indicates that he intended to acknowledge the paper as his will. Parr says that, when he went with Winget up to the north end of the store, Warner said to him, "Winget wants you to sign this paper," and that it was Winget's will, and that Winget did not say anything but stood six or eight feet away; that he, Parr, signed it at Warner's request, and Warner brought it to him, and said it was Winget's will. The acknowledgment of the testator need not necessarily be manifested by words, but may be indicated by his acts and his conduct. Here the person who drew the will, and who superintended its execution, spoke of it as the testator's will in the testator's presence, and

requested the witnesses in the testator's presence to sign it as his will. The silence and presence of the testator gave consent to these declarations on the part of the person, superintending the execution of the will, and amounted to an acknowledgment by the testator of the will as his act and deed. (*Allison* v. *Allison*, 46 Ill. 60; *Nickerson* v. *Buck*, 12 Cush. 332; *Dewey* v. *Dewey*, 1 Metc. 354; *Ela* v. *Edwards*, 16 Gray, 91; *Gilbert* v. *Knox*, 52 N. Y. 129; *In re Nelson*, 141 id. 152; *Inglesant* v. *Inglesant*, L. R. 3 P. & D. 172; 10 Moak's Eng. Rep. 526).

In *Allison* v. *Allison*, 46 Ill. 60, it appeared that the attesting clause was read in the hearing of the testator and the witnesses, reciting that he had executed the instrument as his will, and that the testator thereupon handed the subscribing witnesses the pen, and saw them sign as such, although he uttered not a word during the whole time the witnesses were present; upon this state of facts we said (p. 63): "It is true, the testimony shows no formal acknowledgment in set terms or by words to that effect, and yet the entire transaction amounts to an acknowledgment, as distinct and satisfactory as language could have made it. * * * The statute does not require the acknowledgment to be in language. Any act which indicates the same thing with unmistakable certainty will answer as well. * * * In matters of this sort we must look at the substance rather than the form." In *Nickerson* v. *Buck*, *supra*, it was held, that the actual signature by the testator may be made known to the witnesses by other modes than an express declaration to the witnesses that the will is his, and that any act or declaration, carrying by implication an averment of such fact, is equally effective.

In *Dewey* v. *Dewey*, *supra*, it was said: "It can hardly be supposed that the testator who by his own active agency procures the authentication of the instrument by the requisite witnesses, would have omitted the first step to its due execution, namely, the signature by himself."

In *Peck* v. *Cary*, 27 N. Y. 26, the request to sign the will was not actually made to the witness by the testator, but by the draftsman of the will, who was attending on behalf of the testator to its execution; and it was held, that, the agency of such draftsman being established and known, the understanding of the witnesses, that they came forward and signed because the testator desired them to do so, and the understanding of the testator, that they came and signed at his instance, were perfect, and the privity with the testator, which was the purpose of the statute, was thereby secured.

In *Gilbert* v. *Knox*, *supra*, it was held, that the words of request or acknowledgment may proceed from another, and will be regarded as those of the testator, where the circumstances show that he adopted them, and that the party using them in his presence was acting for him with his assent, and that the testator made no dissent, and, when the witnesses had signed the will, took it into his own possession and thereafter retained it.

In *Inglesant* v. *Inglesant*, *supra*, the deceased signed her will in the presence of one witness, and, on the entry of the second witness, one Mrs. Lee, who was present, directed him to sign his name under the signature of the testatrix. He did so, and the second witness also subscribed the will. The deceased was in the room, and said no word during the proceeding; and the court say, that the invitation by Mrs. Lee in the presence of the testatrix was equivalent to an invitation by, and, therefore, an act of, the testatrix herself; and it was there held, that the deceased acknowledged her signature in the presence of two witnesses. It appears here, that the witness, Parr, was requested by the deceased himself to come to the store, and, after he came, that took place which has already been stated.

*Sixth*—It is said by the plaintiffs in error, that the burden of proof was upon the defendants in error, the proponents of the will, and that they did not introduce both

of the subscribing witnesses to the will, and, therefore, did not make out a *prima facie* case. It does appear here, that the defendants, in opening the case, after reading the affidavits of the subscribing witnesses, as given upon the probate of the will in the county court, introduced the witness, Warner, and the subscribing witness, Smith, and then introduced a large number of witnesses upon the questions of sanity and undue influence, but did not put upon the stand the other subscribing witness, Parr. The latter was introduced as a witness and examined by the plaintiffs in error who were the contestants below, when it came their turn to make their case. The question then arises, whether the proponents of the will made a *prima facie* case by the testimony thus introduced before they rested.

It is well settled by the decisions of this court, that the burden of establishing the validity of the will rests in the first instance on the proponents, and that they are entitled to open and close the case. (*Bevelot* v. *Lestrade*, 153 Ill. 625; *Taylor* v. *Cox*, id. 220).

When a will has been admitted to probate by the county court, and a bill in chancery is filed to set aside such probate, the trial is *de novo*. The issue is submitted to the jury as a new and original question. Section 7 of the Statute of Wills provides, that, "in all such trials by jury, * * * the certificate of the oath of the witnesses at the time of the first probate shall be admitted as evidence, and to have such weight as the jury shall think it may deserve." (3 Starr & Cur. Stat.—2d ed.—p. 4035). In the case at bar, the original oaths of the subscribing witnesses, as made in the county court, were introduced before the ·jury. This court has held that, where the proponents of a will had put in evidence, as the statute authorizes, the testimony of the subscribing witnesses given when the will was admitted to probate, such testimony was *prima facie* evidence of the validity of the will, and raised a presumption of the competency of the tes-

tator, which would be valid until disproven by counter testimony. (*Holloway* v. *Galloway*, 51 Ill. 159). In *Graybeal* v. *Gardner*, 146 Ill. 337, we said that, if the will had been probated in the county court, a certificate of the evidence of the subscribing witnesses would be *prima facie* proof of the validity of the will in a proceeding in chancery, which attacked the probate of the will. But for the purposes of the present case, it is not necessary to hold that the introduction of the testimony of the subscribing witnesses, as given in the county court, is sufficient to make a *prima facie* case in favor of the validity of the will on the part of the proponents thereof. Here, in addition to such testimony, the evidence of one of the subscribing witnesses, and the evidence of the scrivener, who drew the will and superintended its execution, were also introduced, so as to make a *prima facie* case in favor of the validity of the will. That this proof is sufficient for that purpose appears from the case of *Buchanan* v. *McLennan*, 105 Ill. 56, where it was held, that the proponents of the will, by producing and reading in evidence the proof made by the attesting witnesses in the probate court and also the testimony of one of the attesting witnesses, did make a *prima facie* case, so as to shift the burden of proof to the contestants to prove the invalidity of the will, as alleged in the bill. Indeed, in the earlier case of *Rigg* v. *Wilton*, 13 Ill. 15, it was said, that the party, sustaining the will, is not bound to call the subscribing witnesses in a proceeding in chancery to contest the probate of the will. (See, also, *Carpenter* v. *Calvert*, 83 Ill. 62; *Wilbur* v. *Wilbur*, 129 id. 392; *Keithley* v. *Stafford*, 126 id. 507; *In re will of Ingalls*, 148 id. 287; *Taylor* v. *Cox, supra*). Here, the proof introduced in the first place was sufficient to establish a *prima facie* case.

*Seventh*—It is furthermore claimed by plaintiffs in error, that the original affidavits of the attesting witnesses should not have been admitted in evidence, because the statute provides that a certificate of the oath of the wit-

nesses shall be admitted as evidence. This precise point, that the affidavit of the proof of the execution of a will was introduced in evidence, instead of a certified copy thereof, was made in the case of *Potter* v. *Potter*, 41 Ill. 80. It was there held, as it must be held here, that the objection comes too late as made for the first time in this court. It does not appear, that this specific objection was urged on the trial below. It is an objection of an extremely technical character, and, if it had been made below, could have been readily removed. It cannot be entertained here.

*Eighth*—Counsel for plaintiffs in error complain, that special interrogatories were submitted to the jury on the trial below, without being first submitted to the counsel for contestants either before or after the beginning of the arguments. The three questions, which are alleged to have been submitted to the jury as special interrogatories, were: "*First*, was the writing read in evidence purporting to be the last will and testament of Samuel D. Winget, deceased, the will of Samuel D. Winget? *Second*, was the said Winget, at the time of the execution and attestation of the said writing read in evidence, of sound mind and memory? *Third*, was the said Winget unduly influenced by Hannah M. Winget, deceased, to make the said writing, purporting to be his last will and testament?" These questions correspond with the issues of fact, which were held to be proper for submission to the jury in *Buchanan* v. *McLennan*, *supra*. It is only when one of the parties requests the court to submit special interrogatories to the jury, that the opposite party is entitled to examine them before the commencement of the argument. Here the questions were submitted by the court of its own motion. But if this were not so, the questions here submitted are of such a character, that they cannot be regarded as coming within the meaning of the statute in relation to special findings. (Hurd's Stat. of 1895, p. 1162). The questions related merely to the general

verdict, which the jury were required to give in a chancery case brought to contest the probate of a will. The giving of such questions, without first submitting them to counsel for contestants, could have worked no possible injury to the latter. After the giving of them, the verdict of the jury could not be any more special than it would have been if they had not been given.

*Ninth*—Plaintiffs in error further complain, because the trial court held in substance, that the question, whether the testator signed the will or not, was taken from the jury. No error was committed in this respect. This court has held in several cases, that the question, whether a will has been executed with all the proper formalities, is one of law, and not of fact which a jury can consider. (*Roe* v. *Taylor*, 45 Ill. 485; *Graybeal* v. *Gardner, supra*).

*Tenth*—Counsel for plaintiffs in error make two objections to the instructions, given by the trial court for the proponents of the will. The first objection is, that the instructions took from the jury the question of the proper weight to be given to the testimony of the subscribing witnesses. The instructions in this respect were not erroneous. They conformed to the views already herein expressed upon the subject of what is required to be made as a *prima facie* case in favor of the validity of the will by the proponents thereof. They conform to the requirements of this court as laid down in *Buchanan* v. *McLennan, supra, Keithley* v. *Stafford, supra,* and *Purdy* v. *Hall,* 134 Ill. 298. In the latter case we said (p. 304): "The statute expressly provides that, at the trial, the certificate of the oaths of the witnesses at the time of the first probate shall be admitted as evidence. When the proponents put in evidence the testimony of the attesting witnesses, given when the will was probated, covering the points prescribed by section 2 of the Statute of Wills, then the competency of the testator to make a will, and the fact, that the will in controversy was signed and attested as required by the statute, were *prima facie* established. The

burden of proof then shifted to the shoulders of the complainant, who was seeking to impeach the validity of the will."

The second objection, made by plaintiffs in error to the instructions, is that they compel the jury to rely upon testimony as to the sanity of the testator at another and different time than that of the execution of the will. The instruction complained of tells the jury, that the condition of the testator's mind at the time of the execution of the will is the real subject of inquiry, and that proof of his condition prior to that time is only competent, as it tends to illustrate the mental capacity of the testator when making the testament. This instruction conforms exactly to the doctrine of this court as laid down in the case of *Craig* v. *Southard*, 148 Ill. 37, and is in the language used by the court in that case in discussing this subject. (*Walker* v. *Walker*, 2 Scam. 291). It may be said here, as in *Taylor* v. *Pegram*, 151 Ill. 106: "While some of this testimony may have had reference to transactions, which were too remote in time, yet its admission cannot be regarded as affording sufficient ground for reversal, because there was so much other evidence tending to show mental capacity at the time when the will now in contest was made."

Undoubtedly there is some conflict in the testimony, which has been introduced in this case, but we are unable to say, that the verdict is against the weight of the evidence; and, when there is an irreconcilable conflict in the testimony upon which the validity of the will depends, the judgment of the trial court will not be reversed, if the evidence of the successful party considered by itself is clearly sufficient to sustain the verdict. (*Bevelot* v. *Lestrade, supra.*) Here the evidence of the defendants in error considered by itself is sufficient to sustain the verdict.

We discover no error in the record which would authorize us to reverse the decree of the circuit court. That decree is accordingly affirmed.        *Decree affirmed.*