Henline v. Brady.

---

### Solomon Henline, Executor, v. Patrick Brady.

1. WILLS—*Suit to Contest a Will Admitted to Probate is a Trial De Novo.*—The issue in a proceeding to contest a will is to be submitted to the jury as a new and original question, and determined exclusively upon the evidence introduced before them. The trial is *de novo*, and without regard to the fact that the instrument has been admitted to probate.

2. SAME—*Admission of Will to Probate is a Condition Precedent to Filing a Bill to Contest it.*—The admission of a will to probate by the Probate Court is made, by section 7 of the statute, a condition precedent to the right to file a bill in chancery to contest it.

3. SAME—*Order of Probate Court Admitting Will to Probate Not Admissible in Evidence.*—It is not permissible for the proponent to put in evidence the order admitting the will to probate.

4. SAME—*When a Prima Facie Case is Made by Proponent.*— A pro-ponent of a will has made a *prima facie* case when he has introduced the evidence of the witnesses to the will, and put the will in evidence.

5. SAME—*Proponent Not Bound to Call Subscribing Witnesses to Testify.*—A proponent is not bound to call the subscribing witnesses to testify, although a failure to do so, unexplained, might be regarded as a suspicious circumstance.

6. CHANCERY PRACTICE—*Exceptions to Court's Rulings Must be*

*Preserved to Warrant a Review of Them.*—On a trial in chancery the practice is the same as at law, and exceptions to the rulings of the court must be preserved in order to warrant a review of them by an appellate court.

7. Instructions—*To Render a Verdict in Regard to Matter Offered in Evidence.*—It is reversible error to instruct the jury to render a verdict in regard to a paper "offered" in evidence.

8. Appellate Court Practice—*When Fact that it is Not Certified that the Certificate of Evidence Contains All the Evidence, is Not Fatal.*—When it is apparent from the record that all the evidence is contained in the certificate of evidence, it is not indispensable that it be so certified.

Bill to Contest a Will.—Appeal from the Circuit Court of Cook County; the Hon. Elbridge Hanecy, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded. Opinion filed October 15, 1903.

Statement.—Bill filed January 17, 1901, by Patrick Brady, the appellee, against Solomon Henline, the executor of the last will of Mary Brady, deceased, and others, alleges, in substance, as follows : Patrick Brady is a first cousin of Mary Brady, deceased, who died March 3, 1900, leaving her surviving Patrick Brady, John Feeney and Catherine Hayes, her first cousins and heirs at law, and other persons, heirs, etc., unknown to complainant; that she died a spinster, leaving no father, mother, brother or sister. March 23, 1900, Solomon Henline brought into the Probate Court a paper purporting to be her will, dated March 3, 1900. No proof of heirship has been made. By said will the whole estate of deceased is bequeathed to Yetta Henline, who is a minor and not of kin to said deceased. Patrick O'Donnell was appointed, by the Probate Court, administrator to collect, letters issued to him, and he has in his possession all the known personal assets of said estate. December 31, 1900, said will was admitted to probate in the Probate Court, and letters testamentary were issued to Solomon Henline, who was appointed executor by said will. No notice, as required by the statute, was given to the heirs at law of said deceased of the filing of said will, and the Probate Court heard proof of the execution of the same, without such notice. The alleged will is not executed and attested, as required by law, and the deceased was not of sound

Henline v. Brady.

mind and memory, but her mind and memory were so impaired that she was incapable of making a just distribution of her estate, and Solomon and Yetta Henline used fraud, falsehood and misrepresentation to induce her to make said will. Solomon Henline, Yetta Henline, Patrick O'Donnell, John Feeney, Catherine Hayes, and the unknown heirs at law of Mary Brady, deceased, are made defendants, and process prayed, and that a guardian *ad litem* be appointed for Yetta Henline. The prayer for relief is that the alleged will be declared void and not the last will of Mary Brady, deceased, and that the same and the probate thereof be set aside. Answers were filed by Solomon Henline, John Feeney and Charles V. Mandel, who was appointed guardian *ad litem* for Yetta Henline; a default was entered and the bill was taken as confessed in respect to the defendants Patrick O'Donnell, Catherine Hayes and the unknown heirs at law and next of kin of the alleged testatrix, and the cause proceeded to trial.

The will, a copy of which is attached to the bill and made a part thereof, and the attestation of the subscribing witnesses, are as follows:

" I, Mary Brady, of the city of Chicago, county of Cook and State of Illinois, being of sound and disposing mind and memory, do make, publish and declare this to be my last will and testament.

1. I hereby appoint as executor of this, my will, Mr. Solomon Henline, he to serve as such executor without bond, bond and other security being hereby expressly waived.

2. I desire that out of my estate, my executor pay first all my just debts and funeral expenses.

3. The residue and remainder of my estate, I hereby devise and bequeath to Yetta Henline.

In witness whereof, I, the said Mary Brady, have to this, my last will and testament, put my hand this 3rd day of March, A. D. 1900.

Her<br>MARY BRADY.     x<br>mark.

Subscribed, published and declared by the said Mary Brady as and for her last will and testament, in the pres-

ence of us, who at her request, and in her presence and in
the presence of each other, have subscribed our names as
witnesses this 3rd day of March, A. D. 1900.

PAUL KASKE,<br>
KURTZ B. HARE."

It appears from the petition of appellant, in evidence,
that the estate consists solely of personal property of value
not exceeding $2,133.    On the trial, appellant, the propo-
nent of the will, offered in evidence the paper above men-
tioned, which was admitted by counsel for appellee to be
the paper filed by appellant in the Probate Court as the
last will and testament of Mary Brady, deceased, and
which that court probated as such.    The court, on objec-
tion of appellee's counsel, ruled against its admission,
remarking : "It is not competent at all unless it is the
last will and testament."    Whereupon counsel for appellant
offered the will for identification, and it was marked
Exhibit 1.    Appellant's counsel then successively offered
in evidence certain papers relating to the proceedings in
regard to the probate of the will in the Probate Court, all
of which, except one, the court excluded.

Appellant's counsel offered to read in evidence the testi-
mony of Paul Kaske and K. B. Hare, the attesting wit-
nesses to the will, but counsel for appellee objected to the
reading of their testimony, unless the testimony of the
witnesses for the contestants in the Probate Court, which
testimony was contained in the transcript, should also be
read by appellant's counsel; saying that all the testimony
must be read, or none; whereupon appellant's counsel read
all the evidence in the transcript, which is, in substance,
as follows :

Paul Kaske, attesting witness, testified that he knew
Mary Brady from January, 1897, till the time of her death;
that he signed the will, which was shown to him, March 3,
1900, and saw Mary Brady sign it in the presence of Miss
Hayes, Solomon Henline and Kurtz B. Hare; that Mary
Brady could see the witnesses while they were signing the
will, and that the persons above named were present when
witness signed; that the condition of Mary's mind and

memory was good at the time, and there was no fraud or undue influence used to witness' knowledge. On cross-examination the witness testified that the testatrix knew him and talked to him when he was called to witness the will, and said that she wanted Henrietta Henline to have everything she had; that she spoke plainly, so that every one in the room could hear her; that he saw Mary Brady make her mark to the will, and that he signed his name after her name and mark were on it, and that Mr. Henline read the will before witness signed.

K. B. Hare, the other attesting witness, testified, in substance, that he knew Mary Brady for five years; that he signed the will as a witness, and he identified his signature to it; that when he and the witness Kaske came into the room where Mary Brady was, the nurse told Mary that they were the witnesses to witness the will; that the nurse handed the will to Mary and the latter said it was her will; that she had nobody she cared for or who cared for her, or something to that effect, and that she wished to leave all her belongings to Henrietta Henline; that she, Mary Brady, was in a sitting position in bed, and the nurse gave her a pen and ink, and he, witness, saw her make her mark, after which witness and Kaske signed in her presence.

Thomas V. Shannon, witness for the contestants in the Probate Court, testified that he was a clergyman connected with St. James Catholic Church, and that he attended Mary Brady Monday, February 26, 1900, and administered the sacrament to her; that he found her rather weak, quite delicate, and advised her to go to a hospital; but he found she was well housed and cared for, and did not insist; that he saw her the next Wednesday or Thursday, and also March 3, 1900, when he was present with her about forty-five minutes, and that she was absolutely unconscious; that Doctor Friedenwald was there, and the nurse, and that the doctor tried to arouse her, but could not; that she was not able to speak, but kept repeating witness' name; that witness did not know what day she died. On cross-examination this witness testified that he visited Mary twice; he

had no record of the second time, but thought it was Tuesday or Thursday; that the first visit was February 26th, and the last Saturday, March 3d; that he certainly visited her twice, and possibly three times.

Dora Hayes, witness for proponent, testified that she was a trained nurse, and attended Mary Brady for the last four days before her death; that on the day of her death her mind was perfectly clear; that on Friday morning next prior to her death Father Shannon called to see her about eleven o'clock, and that Doctor Friedenwald did not visit Mary on Saturday, the last day of her life. On cross-examination the witness testified that she recollected that Father Shannon was there Friday, and not Saturday, because she, witness, sent for the doctor, and he came in while the priest was in the house; that, at that time, Mary Brady was ill enough so that witness was anxious to have a doctor see her; but that Mary was not then unconscious; that they could rouse her by speaking to her, and that when roused her mind was clear.

" She spoke to the father; she asked him to put his hand to her head and bless her, and she also asked him to hold her hand, and he did touch one of her fingers, I believe. On Saturday she was very much improved. She would talk to different members of the family, and ask for food, and was interested in what was going on around her. Father. Shannon was there only that one morning."

The foregoing was all the testimony taken in the Probate Court, and read on the hearing of the cause. At the conclusion of such reading counsel for appellant moved that the will be admitted in evidence, when the court said he would rule on that later, when appellant's evidence would be all in.

Appellant's counsel then called successively as witnesses Kurtz B. Hare and Dora Hayes, whose testimony before the Probate Court had been read, but the court, on objection made, excluded them. Appellant's counsel then called as a witness Mrs. Jake Stone, who testified substantially as follows : That she knew Mary Brady continuously for twenty-eight years before her death, and was with her

Henline v. Brady.

daily at the time of her death; that she was perfectly sane, and talked to all members of the family on the day of her death, about two or three o'clock; that Father Shannon was at the house where Mary Brady was on the Friday of the last week of her life; that witness herself went for him at eleven o'clock of that day, and that she, witness, was with Mary Brady the whole of that Saturday, and that Father Shannon was not there that day.   At the conclusion of the testimony of this witness counsel for appellee objected to the admission of the will in evidence, specifying as grounds for the objection that the proponent had failed to make a *prima facie* showing that Mary Brady was of disposing mind and memory; that the evidence of testamentary capacity was vague, conflicting and contradictory, and that it was not shown that notice had been sent to all the known parties in interest before the hearing in the Probate Court.

The court sustained the objections of appellee's counsel, refused to admit the will in evidence, and peremptorily instructed the jury to find that it was not the last will of Mary Brady, deceased, which the jury did, and a decree was rendered accordingly.

HARRY SIMONS and FRANK M. BURWASH, attorneys for appellant.

The probate required to be made, under section 7 of the act of 1872, in the chancery contest is *de novo*, and is not in any sense intended as a trial of the judgment of the Probate Court, nor as a review of the action of that court, nor of its procedure.   In fact, the procedure may, and usually does, depart greatly from that at first probate.   In the Probate Court two attesting witnesses must testify that in their opinion the testator was of sound and disposing mind and memory, whereas in the chancery contest the will may be probated without the testimony of the attesting witnesses at all, or even over their testimony in opposition to the will.   Rigg v. Wilton, 13 Ill. 15, 18; Johnson v. Johnson, 187 Ill. 86.

The formal certificate of the judge at the end of the certificate of evidence is not the only source of information to this court. The court has a right to examine the whole record, and if in any way satisfied that all the evidence is preserved, the court will so find. Mullin v. Johnson, 98 Ill. App. 621; Stickney v. Cassell, 1 Gilm. 420; Harris v. Miner, 28 Ill. 135; C., M. & St. P. Ry. Co. v. Walsh, 150 Ill. 607.

Though the certificate of evidence should recite that it contains all the evidence, yet the court may examine the record to test truth of certificate. Peacock v. Carnes, 110 Ill. 99.

BASTRUP & O'NEILL, attorneys for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

It is evident from the record that this cause was tried on the theory that it was incumbent on appellant to prove the regularity of the proceedings in the Probate Court on the application to admit the will to probate. This theory is erroneous. Rigg v. Wilton, 13 Ill. 15; Tate v. Tate, 89 Ill. 42; Harp v. Parr, 168 Ill. 459; Craig v. Southard, 148 Ill. 37, 43.

In Rigg v. Wilton the court say:

"The issue is to be submitted to the jury as a new and original question, and determined exclusively upon the evidence introduced before them. The trial is *de novo*, and without regard to the fact that the instrument has been admitted to probate."

While the admission of the will to probate by the Probate Court is made by section 7 of the statute a condition precedent to the right to file a bill in chancery to contest a will (In re Will of Ingalls, 148 Ill. 287,) and it must appear that the condition has been fulfilled, it is not permissible for the proponent to put in evidence the order admitting the will to probate (Craig v. Southard, 148 Ill. 37, 43), nor is this necessary when the admission to probate is not denied, because the admission to probate being a condition prece-

dent, the complainant must aver in his bill fulfillment of the condition, as appellee has done in the present case.

The will, a copy of which is attached to the bill and made a part thereof, and which is set out in full in the statement preceding this opinion, was produced in court by the file clerk of the Probate Court, who testified that it was a paper purporting to be the will of Mary Brady, and that it was filed in the Probate Court at the time shown by the file mark, all of which was admitted by appellee's counsel.

The will, on its face, appears to have been properly signed by the testatrix, who, as the evidence shows, could not read, and so made her mark, and is attested by two witnesses, as required by the statute. It is not objected in argument by appellee's counsel that the will was not properly signed or attested. The testimony of the attesting witnesses, Paul Kaske and Kurtz B. Hare, given in the Probate Court, was read on the trial, not only without objection, but with the consent of appellee's counsel, and their testimony, together with that of Mrs. Stone, which is substantially set forth in the preceding statement, made a *prima facie* showing that the paper produced in court and purporting to be the last will and testament of Mary Brady, deceased, and which the court refused to admit in evidence, is her last will and testament. Holloway v. Galloway, 51 Ill. 159; Harp v. Parr, 168 Ill. 459, 477-8; Huggins v. Drury, 192 Ill. 535.

The evidence of the witness Shannon, that Mary Brady was unconscious March 3, 1900, the day she executed the will, conflicts with the testimony of appellant's witnesses, but when there is a conflict in the evidence, the jury must decide as between the witnesses.

It is contended by appellee's counsel that, as there was no exception to the refusal of the court to admit the will in evidence, such refusal can not be assigned as error or reviewed here. We are of opinion, contrary to the views expressed by appellant's counsel, that the opinion in Tucker v. Cole, 169 Ill. 150, is decisive that, on a trial in chancery such as was had in this cause, the practice is the same as at law, and that exceptions to rulings of the court must be

preserved in order to warrant a reviewing court to reverse
a decree because of them. Appellant's counsel, however,
excepted to the instruction of the court taking the case
from the jury, and has assigned the giving of that instruc-
tion as error. The issue prescribed by section 7 of the stat-
ute is, "whether the writing produced be the will of the
testator or testatrix or not." The instruction given to
the jury by the court is, "The jury are instructed to find
the issues for the complainant, and that the paper offered
here is not the last will and testament of Mary Brady,
deceased." The word "produced," in section 7 of the stat-
ute, must be understood as meaning produced in evidence.
It would be an anomaly in practice, and could not have
been contemplated or intended by the legislature, that the
jury should render a verdict in regard to a paper not in
evidence. The verdict of a jury must be based on the evi-
dence and the instructions of the court. It is their prov-
ince to find the facts from the evidence. In arriving at
their conclusions of fact, they must consider solely the evi-
dence in the cause, and it is proper and not unusual to
instruct the jury that they are not to consider evidence
offered but excluded by the court.

The writing alleged to be the last will is not offered in
evidence as a will requiring no proof to sustain it, but as a
writing claimed to be the last will; and, when it is admitted
in evidence, it devolves on the proponent to make *prima
facie* proof that it is the last will of the person whose will
it is claimed to be. That the writing claimed to be the
last will of Mary Brady shall be in evidence is indispen-
sable to the inquiry whether or not it is in fact her last
will, and unless it is in evidence, the jury can not render a
valid verdict in regard to it. It was, therefore, reversible
error to instruct the jury to render a verdict that the paper
" offered," which was claimed to be Mary Brady's last will,
but which was not in evidence, was not her last will. But
if the word "produced," in section 7, should be construed
as the court practically, at least, construed it, in giving the
instruction, namely, as meaning merely produced in court,

without being put in evidence, this would not avail appellee, because the writing purporting to be Mary Brady's last will was not only produced in court, but was offered in evidence, and we have shown that there was evidence tending to prove that the writing was her last will and testament. The evidence, as we think, would have fully warranted the jury in finding for the proponent, had the writing been admitted in evidence. Thus, whatever construction is adopted, the giving of the · instruction was error which necessitates reversal of the decree.

When appellant's counsel offered to read the testimony of the witnesses to the will, given in the Probate Court, the court ruled that all the testimony, including that of Shannon, witness for the contestants, must be read, or none, and appellant's counsel was compelled to read Shannon's testimony as a condition of reading the testimony of the subscribing witnesses to the will. No exception was preserved to this ruling, but as there must be a new trial of the cause, if not abandoned by appellee, we think it proper to consider the ruling. We think the ruling was erroneous. All that the proponent of the will was bound to do, was to make a *prima facie* case, and this only required the reading of the testimony of the subscribing witnesses to the will, and putting the will in evidence. Graybeal v. Gardner, 146 Ill. 337, 343, and cases cited. He was not bound to read the testimony of Shannon, and thus, apparently, make Shannon his own witness, as appellee's counsel claim he did. After the reading by appellant's counsel of the testimony of Kaske and Hare, it would have been competent for the opposing counsel to read the testimony of Shannon, which, if he had done, the testimony of Dora Hayes, in rebuttal, might have been read by appellant's counsel. Kaske and Dora Hayes were called as witnesses by appellant's counsel, and the court, on objection, refused to permit them to testify, to which ruling appellant's counsel excepted. Kaske was one of the subscribing witnesses to the will, and both his testimony and that of Dora Hayes, before the Probate Court, had been read in evidence. Notwithstanding this,

they were competent witnesses, and counsel had a right to call and examine them. No reason for their exclusion appears from the record, and we can conceive of no valid reason. A subscribing witness may be called on a contest of the will in chancery, notwithstanding his testimony given in the Probate Court has been read in evidence. In Rigg v. Wilton, *supra*, the court say of the subscribing witness to the will:

" The party sustaining the will is not bound to call them, although a failure to do so, unexplained, might be regarded as a suspicious circumstance."

In Harp v. Parr, 168 Ill. 459, 477, one of the subscribing witnesses to the will, whose testimony given in the Probate Court had been read in evidence, was called and testified as a witness; and in Baker v. Baker, 202 Ill. 595, 613–616, the testimony of the subscribing witness in the Probate Court was admitted in evidence, after they had testified in person in the cause, and the Supreme Court held that there was no error in this ruling of the trial court. The fact that Dora Hayes testified in the Probate Court, in rebuttal of the testimony of Shannon, did not render her incompetent as a witness on the trial, and, as previously stated, we perceive no valid reason for excluding her as a witness. Counsel for appellee object that it is not certified that the certificate of evidence contains all the evidence. We think it apparent from the record that all the evidence is contained in the certificate, and this is sufficient. Marine Bank of Chicago v. Rushmore, 28 Ill. 443.

However, the objection, if well taken, would not affect our decision, in view of the grounds on which it is based.

The decree will be reversed and the cause remanded, appellant to recover his costs of this court.